**Willie Heflin WHITE, for himself and all others similarly situated, Plaintiff,**

**v.**

**James N. GILLMAN, Commissioner, Iowa Department of Social Services, et al., Defendants.**

**Civ. No. 72–197–2.**

United States District Court, S. D. Iowa, C. D.

June 6, 1973.

L. Vern Robinson, Iowa City, Iowa, for plaintiff.

Lorna L. Williams and Thomas R. Hronek, Asst. Attys. Gen., Des Moines, Iowa, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT

HANSON, Chief Judge.

This action was instituted by Willie Heflin White for injunctive and declaratory relief regarding his transfer from the Iowa State Reformatory at Anamosa, Iowa, to the Iowa State Penitentiary at Fort Madison, Iowa, in June of 1972. The plaintiff alleges he was transferred without a hearing, notice or reason given, and that as a result of this transfer he has lost rehabilitative opportunities available at the Reformatory and that the security at the Penitentiary is harsher than at the Reformatory, resulting in more severe punishment.

The plaintiff complains that the statute under which he was transferred [1] and the state transfer procedures make no provision for "due process" safeguards and thus are violative of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The relief prayed for is (1) that the defendants be temporarily and permanently enjoined from incarcerating plaintiff at the Penitentiary and that he be returned to the Reformatory, (2) that the Court declare section 246.13 of the

---

1. "The state director may transfer prisoners from the men's reformatory to the penitentiary:
    1. When the prisoner has been guilty of insubordination or of repeated violations of the rules of the reformatory.
    2. When the prisoner is not a hopeful subject for reformatory treatment."

Code of Iowa unconstitutional, (3) that the Court enjoin the defendants from operating under 246.13, and (4) that the Court grant any additional relief as may appear to be equitable and just.

The plaintiff requested the convening of a three-judge court which was duly convened on November 6, 1972. By order of the three-judge court, however, is was determined that this matter was appropriate for disposition by a one-judge court. This cause of action was remanded for disposition by one judge. The question for determination by this Court was narrowed as a result of this remand order from the question of whether the transfer statute itself is unconstitutional to whether the procedures used in administering this statute violates the plaintiff's right to "due process".

The plaintiff invokes jurisdiction of this Court pursuant to Title 42 U.S.C. § 1983 and Title 28, U.S.C. § 1343(3).

### FINDINGS OF FACT

The foundation of plaintiff's claim of a violation of his right to "due process" is that he was deprived of opportunities for rehabilitation and that he was subjected to more harsh punishment in the Iowa State Penitentiary and that the above deprivations occurred as a result of the transfer without a "due process" hearing.

The Court first remarks that both of the institutions involved in this lawsuit are prisons where the greatest deprivation of rights the inmates suffer is loss of their freedom. Beyond this, however, the Court does recognize on the basis of the affidavits submitted to the Court and laws regarding commitment to these institutions [2] and the statutes governing transfer of these inmates [3], that there are important differences between the two institutions.

The statute governing the proper place of confinement in Iowa provides for the sentencing of younger criminals who are not convicted of one of a list of more serious crimes and who are first offenders to the Men's Reformatory at Anamosa. Older criminals over thirty years of age, recidivists, and those convicted of more serious crimes are to be confined in the Iowa Penitentiary at Fort Madison.

"Any male person who shall be committed to the penitentiary, except those convicted of murder, treason, sodomy, or incest, and who at the time of commitment is between the ages of sixteen and thirty years, and who has never before been convicted of a felony, shall be confined in the men's reformatory; provided however, that persons between the ages of sixteen and thirty years convicted of rape, robbery, or of breaking and entering a dwelling house in the nighttime with intent to commit a public offense therein, may, as the particular circumstances may warrant, in the discretion of the court be committed to either the men's reformatory at Anamosa, or the penitentiary at Fort Madison." Section 789.16 of the Code of Iowa.

It is clear that the Iowa Legislature contemplated significant difference in the type of inmate population at these two institutions and also that the Legislature felt it desirable to house the older criminals, the recidivists, and the serious offenders in a different institution than that housing the less hardened criminal.

This philosophy of the legislature towards the two institutions is also evident from the requirements set out for a transfer of inmates from one institution to the other. Section 246.12 of the Iowa Code provides:

"The state director may transfer first term and promising prisoners from the penitentiary to unoccupied rooms in the men's reformatory whenever the number of inmates in the

---

2. Section 789.16 of the Iowa Code (1973).

3. Sections 246.12 and 246.13 of Iowa Code (1973).

penitentiary exceeds the number of cells therein. . . . "

The legislature provided for transfer of the less hardened criminal and "promising" prisoners to the reformatory indicating a desire to maintain a certain type of prisoner in this institution. Again in Section 246.13 of the Code of Iowa the legislature indicated that more troublesome prisoners and those "not a hopeful subject for reformatory treatment" could be transferred to the penitentiary at Fort Madison.

The Iowa Legislature through these statutes has clearly recognized a substantial difference between these two institutions. This recognition of the difference between the institutions by Iowa law, coupled with plaintiff's numerous affidavits alleging loss of ability to participate in many rehabilitative programs and harsher discipline in the penitentiary supports the plaintiff's allegation that he has suffered a substantial loss by being transferred to and confined in an institution consisting of older inmates convicted of more serious crimes who are more likely to be habitual criminals.

The court finds that although Willie White was notified of the transfer on or about June 29, 1972, and told the reasons for the transfer, he was not given a proper "due process" hearing prior to his transfer to Fort Madison. (See affidavits of Charles H. Haugh filed December 14, 1972 and January 12, 1973, respectively.)

## CONCLUSIONS OF LAW

The United States Supreme Court has stated that, "whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss'." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ The Court has determined in the preceding that Willie H. White suffered substantial losses as a result of this transfer to Fort Madison in the form of loss of rehabilitative opportunities, the

exposure to the type of inmate in the Penitentiary at Fort Madison, and harsher discipline at the penitentiary. Therefore, certain fundamental elements of "due process" are required before a transfer from the reformatory to the penitentiary. See Gomes v. Travisono, 353 F.Supp. 457, 467 (D.R.I.1973). The procedural protections should be geared to determining if the standards for transferring inmates enunciated in 246.13 of the Code of Iowa are met.

"The state director may transfer prisoners from the men's reformatory to the penitentiary:

1. When the prisoner has been guilty of insubordination or of repeated violations of the rules of the reformatory.

2. When the prisoner is not a hopeful subject for reformatory treatment." -

■ This Court concludes that a prior hearing is essential to a determination that a prisoner must be transferred from the reformatory to the penitentiary and that the following procedures are required by minimum standards of due process before the transfer may be consumated:

■ The inmate must be given timely notice of the pendency of transfer proceedings and the nature of the charge or reasons for the transfer. Within a reasonable period of time he must be given a hearing before whatever tribunal or individual makes the initial or possibly final decision as to whether he will be transferred. Such a tribunal or individual must be impartial, that is, the initiating or investigative officer may not also bear responsibility for the ultimate decision reached. Some participation by the investigating officer in the proceedings will not necessarily taint the result, however. What is essential is that the fairness and objectivity of the decision-making body remain unimpaired. At the hearing an inmate must be given a fair and meaningful chance to explain his side of the story, to question the accusing witnesses, and to present defenses

or mitigating circumstances or other reasons why he should not be transferred under the standards of section 246.13 of the Code of Iowa to the decision-maker. The inmate must also be given a reasonable chance to present witnesses on his behalf where fairness demands. The decision-maker need not follow judicial rules of evidence or prepare a transcript, but a basic record of the substance of the proceedings, the disposition reached, and the reasons therefor should be made. This is to insure that the decision reached will be based on an unbiased record. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) for the basic pronouncement of the U. S. Supreme Court as to "rudimentary" requirements of "due process" upon which this opinion is based.

There may be, however, emergency situations where the state's compelling interest in an immediate transfer outweigh the need for a prior hearing. After the passing of this emergency the inmate should be returned for a proper hearing if he is to be considered for permanent transfer.

The defendant has cited a series of cases in which several courts refused to recognize the right of an inmate to a proper hearing before being transferred to a different institution. United States ex rel. Stuart v. Yeager, 3rd Cir., 293 F.Supp. 1079, aff'd. 419 F.2d 126 (3rd Cir. 1968), cert. den. 397 U.S. 1055, 90 S.Ct. 1400, 25 L.Ed.2d 673 (1969); Urbano v. McCorkle, 334 F.Supp. 161 (D.N. J.1971); Verde v. Case, 326 F.Supp. 701 (D.C.Pa.1971); Hillen v. Director of Department of Social Service and Housing, 455 F.2d 510 (9th Cir. 1972); United States ex rel. Thomas v. Bookbinder, 330 F.Supp. 1125 (E.D.Pa.1971).

The Court declines to follow the foregoing precedents and instead follows the precedent of Gomes v. Travisono, 353 F. Supp. 457 (D.R.I.1973) for two main reasons. The first is that Morrissey v.

Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) was decided after the decisions in defendants' cases and this Court believes that *Morrissey* denotes substantial changes in the due process rights of prison inmates as well as parolees. Second, the Court believes the language in the Iowa law as to differences in inmates sent to these two institutions and the actual setting of standards [4] for the transfer of prisoners implies a much stronger need for a hearing than in those cases cited by the defendant.

### ORDER FOR JUDGMENT

Upon the basis of the prior findings of fact and conclusions of law, the Court will enter an order requiring the return to the reformatory of Willie Heflin White. Willie Heflin White is not to be transferred again to the penitentiary unless a decision is made, under the proper due process safeguards enunciated in this opinion, that he should be transferred to the penitentiary pursuant to section 246.13 of the Code of Iowa (1973).

The Court declines to declare the present cause of action to be a class action under Federal Rule of Civil Procedure 23, in addition to declining to issue general injunctive relief as requested by the plaintiff. The Court believes the prison administrators will understand the law and procedures enunciated in this opinion and will make a good faith effort to follow its dictates, just as they have in response to the decision in Lathrop v. Brewer, 340 F.Supp. 873 (S.D.Ia.1972). Therefore, other matters relating to transfer of inmates will be handled on an individual basis as it relates to a particular factual situation. No general relief is given at this time.

It is ordered, adjudged and decreed that the above shall constitute the findings of fact, conclusions of law, and order for judgment in the above entitled cause.

4. Section 246.13 of the Code of Iowa (1973).