Warner S. **KELLY**, Plaintiff,

v.

Lou V. **BREWER**, Warden of the Iowa State Penitentiary, Defendant.

Civ. No. 73–177–2.

United States District Court, S. D. Iowa, C. D.

June 6, 1974.

Robert Bartels, Robert N. Clinton, Barry A. Lindahl, John Thompson of the College of Law, Iowa City, Iowa, for petitioner.

Richard C. Turner, Iowa Atty. Gen., and Lorna L. Williams, Thomas R. Hronek and Michael P. Murphy, Asst. Attys. Gen., Des Moines, Iowa, for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

HANSON, Chief Judge.

This cause of action was filed by the plaintiff, Warner S. Kelly, alleging that he has been subjected to a deprivation of constitutional rights under color of state law due to the facts and conditions surrounding his confinement in adminis-

trative segregation at the Iowa State Penitentiary. The plaintiff alleges a deprivation of his right to due process under the Fourteenth Amendment to the United States Constitution and alleges a violation of the proscription against cruel and unusual punishment under the Eighth Amendment.

Jurisdiction of this cause of action is conferred upon this Court by Title 42, U.S.C., Section 1983 and Title 28, U.S.C., Section 1343(3). This cause of action was heard on February 13, 1974 and all briefs and evidence relating to this cause have now been received.[1]

## FINDINGS OF FACT

1. The plaintiff, Warner S. Kelly, is an inmate of the Iowa State Penitentiary, Fort Madison, Iowa. The defendant, Lou V. Brewer, is the Warden of the Iowa State Penitentiary.

2. On June 8, 1972 plaintiff Kelly was confined in Cellhouse 19 at the Iowa State Penitentiary serving state sentences totalling thirteen (13) years for the crimes of kidnapping, malicious injury to a building, lascivious acts with a child and escape. (Defendant's Exhibit H.) On this date a guard was stabbed and killed at the Penitentiary and Kelly became a suspect in the stabbing. On the date of the stabbing Kelly was in administrative segregation in his cell in Cellhouse 19 which meant that he was not allowed to mingle with the general prison population and was confined at all times to his cell, except if removed from his cell for "approved" reasons. (Defendant's Exhibit J.)

3. Kelly was moved following the stabbing of the guard to Cellhouse 97 and remained in this cellhouse for a period of approximately four days. Cellhouse 97 was a maximum security cellhouse in which inmates were isolated from the rest of the prison population.[2] The plaintiff was given no type of due process hearing prior to his confinement in Cellhouse 97. (Defendant's Exhibit J.)

4. The plaintiff was subjected to substantial deprivations which inmates in the general prison population did not suffer. This included a lack of clothing and bedding during the period from June 8, 1972 to June 12, 1972, no eating utensils, irregular meals, no toilet paper, no showers, and the plaintiff was in a cell in which steel flaps were closed to shut out all light.[3] On June 12, 1972 the plaintiff was transferred to the Iowa Security Medical Facility (I.S.M. F.) at Oakdale, Iowa for "safekeeping" until he was returned to the Iowa State Penitentiary and Cellhouse 97 on August 9, 1972.

5. A county attorney's information was filed in Lee County, Iowa on July 5, 1972 charging Mr. Kelly with murder in connection with the death of the guard. Mr. Kelly was convicted of murder in the second degree on May 4, 1973 in Wapello County, Iowa and was sentenced to a term of ninety (90) years. Between August 9, 1972 and the date of his trial on the murder charge the plaintiff was confined in administrative segregation in Cellhouse 97. On April 23, 1973 the plaintiff was transferred to the Wapello County Jail for trial on the charge of murder in connection with the stabbing of the guard.

6. During the period from August 9, 1972 to the present the conditions of confinement for the plaintiff have gradually improved from the conditions he endured during his lockup from June 8, 1972 to June 12, 1972. He has been given additional privileges. He is allowed

---

1. The plaintiff filed a Motion for Preliminary Injunction on May 28, 1974 which is disposed of by this ruling upon the merits of his cause of action.

2. The plaintiff's confinement would be labeled by the prison administration as "administrative segregation," but it has been referred to as solitary confinement by the plaintiff. The Court of course is not interested in a game of semantics but only in the *conditions* of confinement no matter what it is labeled by prison administrators.

3. This was a form of retribution and punishment by the prison staff against this inmate before his trial and conviction.

to exercise. He has been allowed a television since May of 1973. He is allowed subscriptions to certain magazines. He is allowed to visit counselors and clergymen. He is allowed cigarettes as of around Christmas of 1972. He is allowed more furnishings in his cell. The plaintiff, however, was still in a condition of isolation from the rest of the prison population. The plaintiff was given no "due process" hearing regarding the reason for his confinement during the pre-trial period.

7. Following his conviction in Wapello County for second degree murder, the plaintiff was returned to Fort Madison in June of 1973 and again placed in Cellhouse 97 in administrative segregation. Plaintiff again received no hearing or opportunity to be heard as it relates to his confinement in indefinite administrative segregation. The plaintiff continued to be confined in Cellhouse 97 until October 29, 1973 when he was transferred to Cellhouse 20 where he had been continuously confined in isolation to the date of trial on this cause. Cellhouse 20 is a maximum security cellhouse which replaces Cellhouse 97 and is the building where prisoners are isolated from the general prison population. The plaintiff seldom if ever leaves the confines of Cellhouse 20.

8. For purposes of examination in this case there have been three separate periods of administrative segregation (solitary confinement) for the plaintiff following the slaying of the prison guard: the first period from June 8 to June 12, 1972, the pre-trial period of confinement from August 9, 1972 to April 23, 1973 and the post-trial confinement of the plaintiff to the present time.

9. The defendant apparently justified the pre-trial detention of the plaintiff in "isolation" on the basis of protecting the safety and order of the institution and also on the basis of pre-trial detention to assure his appearance at trial.

10. The reasons for Mr. Kelly's present lockup in "indefinite administrative segregation" is, first, the judgment of Warden Brewer that Mr. Kelly poses a substantial threat to the safety and security of the institution. The Warden bases his conclusion that Mr. Kelly poses a threat to the safety and security of the institution upon his conviction of second degree murder of the correctional officer. Warden Brewer testifies that it is his judgment that murder or assault upon an institutional staff member is sufficient reason for placing and retaining an inmate in indefinite administrative segregation without further hearing beyond the criminal trial. Warden Brewer stated that an inmate need not be released from administrative segregation until he has demonstrated to his satisfaction that he will not pose a threat to the security of the institution and that there will be no significant negative reaction from institution staff members if he is released. The second reason for the "indefinite administrative segregation" of Mr. Kelly was stated to be the negative reaction of the prison staff which would result if Mr. Kelly were to be released. The third reason is the general deterrent effect which Mr. Kelly's confinement may have on assaultive conduct by other inmates. A final reason that Mr. Kelly is being maintained in "indefinite administrative segregation" is the plaintiff's past record although Warden Brewer states that the conviction of a murder while in the institution would be sufficient reason in itself.

11. As stated earlier, many of the deprivations to which the plaintiff has been subjected have been alleviated from the extreme situation following his confinement in administrative segregation on June 8, 1972. The Court considers to be most important the deprivations to which he is subjected to at the present time as it relates to determining what action should be taken as to the plaintiff's status in the future. At the present time the plaintiff is in a status of indefinite administrative segregation. Essentially this status involves confinement in a cell twelve feet by nine feet,

except for periods in which the plaintiff is allowed to shower or when he has visits. Plaintiff seldom if ever leaves the confines of Cellhouse 20. At the time of trial there was no provision for exercise for those inmates in Cellhouse 20, although there are indications that this problem was to be alleviated. Plaintiff has visual contacts only with officers in this cellhouse, clergymen if he desires contact with these persons, visitors or counselors in the institution. His communications with other inmates must be done verbally by shouting through the walls to these other inmates. Plaintiff has for furnishings in his cell a bed, a small table, a stool, a sink and toilet, books and television, and some personal belongings. The plaintiff has been granted permission to buy a radio and has library privileges. Although all prisoners are subject to certain deprivations as a natural accoutrement to their confinement, there can be and is no argument but that the plaintiff's present status involved greater deprivation than that to which the general inmate population is subjected. This is plainly shown by the fact that solitary confinement and administrative segregation are used as punishment for infractions of the institution's rules in addition to being used for the protection of the staff and the inmates of the institution. This is also shown by the fact that the Warden feels that placing Kelly in solitary confinement is a deterrent to assaultive behavior by other inmates. (Defendant's Exhibit J.)

12. Dr. Stephen Fox, a psychologist employed by the University of Iowa, has studied the effects of this type of confinement upon prisoners and has concluded that solitary confinement (administrative segregation) and the sensory deprivation resulting from such confinement can have extremely harmful psychological and physical effects upon the person involved. Possible deleterious effects include loss of self concept, disorientation, depersonalization (unrealistic interaction with others), depression, frustration, distrust of others, lack of productivity, and retarded personal growth. (Plaintiff's Exhibit 4.)

13. Upon return to the penitentiary following his conviction of second degree murder, the plaintiff was again placed in his present status of administrative segregation without a "due process" hearing to determine if his situation warranted this deprivation. The plaintiff is being held indefinitely in his present status with no hope of entering the general prison population unless he meets certain undefined criteria of defendant Warden Brewer. There is a "monthly review" of the plaintiff's status by the Program Review Committee to determine whether the plaintiff should be released into the general inmate population. The testimony at trial in this cause showed this review to have been a sham and a meaningless exercise. Basically the plaintiff appeared at the "hearing" and was told that his status is being continued. There are no standards of review to which the plaintiff can direct himself to attempt to show his fitness for release into the general inmate population. The plaintiff has been uncooperative as it relates to attending many of these monthly review sessions after he felt they would not be meaningful.

14. There are other inmates in the penitentiary who are also being maintained in "indefinite administrative segregation" because of assaults committed while in the institution. These inmates are Ed Clark who has killed a correctional officer and a fellow inmate and Sam Parras who was convicted of assault with intent to commit murder in connection with the non-fatal stabbing of a correctional officer. Sam Parras has a lawsuit presently on file, Civil No. 73–246–2, which contains similar constitutional arguments to that of Mr. Kelly.

## CONCLUSIONS OF LAW

The Eighth Circuit has stated many times the principles to be followed when

a federal court reviews the conduct of state prison administrators:

"The law to be applied is well settled. Lawful incarceration necessarily operates to deprive a prisoner of certain rights and privileges he would otherwise enjoy in the free society, a retraction justified by considerations underlying our penal system. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). A convict, however, does not lose all of his civil rights—for those that are fundamental follow him, with appropriate limitations, through the prison gate, and the walls do not foreclose his access to the courts to protect those rights. Sharp v. Sigler, 408 F.2d 966 (8th Cir., March 24, 1969); Jackson v. Bishop, *supra*. On the other hand, prison officials are vested with wide discretion in controlling prisoners committed to their custody. Douglas v. Sigler, 386 F.2d 684 (8th Cir. 1967); Stroud v. Swope, 187 F.2d 850, 851 (9th Cir. 1951), and it is elementary that unless an infringement upon constitutional or fundamental rights is involved, federal courts are naturally reluctant to interfere with a prison's internal discipline, whether the institution is federal or state. Sharp v. Sigler, *supra*; Jackson v. Bishop, *supra*." Courtney v. Bishop, 409 F.2d 1185, 1187 (8th Cir. 1969).

■ Although the rule has always been that federal courts will not interfere with prison administration absent a matter of constitutional dimension, the willingness of courts to recognize and perceive violations of the constitutional rights of prisoners has greatly changed in the recent past. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973); Lathrop v. Brewer, 340 F.Supp. 873 (S.D.Iowa

1972); White v. Gillman, 360 F.Supp. 64 (S.D.Iowa 1973).

In this case the plaintiff is asserting violations of his constitutional rights as it relates to "Due Process," "Equal Protection" and "Cruel and Unusual Punishment".

*Cruel and Unusual Punishment Claim*

Plaintiff Kelly asserts that his confinement in indefinite administrative segregation and the conditions surrounding that confinement constitute cruel and unusual punishment in violation of the Eighth Amendment. The question of what constitutes cruel and unusual punishment has been before the Eighth Circuit many times. One of the leading cases is Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968) where the Court stated:

"In summary, then, so far as the Supreme Court cases are concerned, we have a flat recognition that the limits of the Eighth Amendment's proscription are not easily or exactly defined, and we also have clear indications that the applicable standards are flexible, that disproportion, both among punishments and between punishment and crime, is a factor to be considered, and that broad and idealistic concepts of dignity, civilized standards, humanity, and decency are useful and usable." 404 F.2d at 579.

Some other Eighth Circuit cases which have considered claims of cruel and unusual punishment are Sharp v. Sigler, 408 F.2d 966 (8th Cir. 1969); Burns v. Swenson, 430 F.2d 772 (8th Cir. 1970); Harris v. Settle, 322 F.2d 908 (8th Cir. 1963); Knecht v. Gillman, 488 F.2d 1136 (8th Cir. 1973).[4]

■ Solitary confinement in itself does not constitute cruel and unusual punishment. Courtney v. Bishop, *supra*, 409 F.2d at 1187; Sharp v. Sigler, *supra*. The Court must look to other factors to determine whether a particular episode of solitary confinement constituted cruel and unusual punishment.

4. A comprehensive collection of cases on cruel and unusual punishment is contained in 51 A.L.R.3d 111.

These factors would include the physical conditions surrounding the confinement, the length of the confinement, the reason for the confinement, and the inmate's control over his status of confinement.

Since the treatment of the plaintiff in solitary confinement varied greatly from the initial period of June 8, 1972–June 12, 1972 and the period of confinement from August 9, 1972 to the present, the Court treats these periods separately for Eighth Amendment analysis.

■ The Court concludes that the conditions surrounding the plaintiff's confinement in solitary confinement from June 8, 1972–June 12, 1972 offend societal standards of decency and respect for human life and thus constituted cruel and unusual punishment. The plaintiff was locked in a completely dark cell with no clothing or bedding, no eating utensils and no toilet paper. This constituted a form of retribution and punishment which relegated the plaintiff to subhuman and subanimal treatment. This Court cannot condone this type of conduct on the part of the prison staff even though the Court recognizes the bitter and emotional response to the killing of a fellow staff member.

Other cases in which solitary confinement combined with extreme conditions of confinement have been held to constitute cruel and unusual punishment are Wright v. McMann, 387 F.2d 519 (2d Cir. 1967) (denuded and exposed to bitter cold, deprived of the basic elements of hygiene such as soap and toilet paper, filthy and barren cell); LaReau v. Mac-Dougall, 473 F.2d 974 (2d Cir. 1973), cert. denied 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973) (strip cell darkened night and day, "Chinese toilet," no opportunity to maintain personal hygiene); Gates v. Collier, 349 F.Supp. 881 (N.D.Miss.1973) (dark hole cells, naked, without hygienic materials, bedding, adequate food or heat, no opportunity to clean themselves or the cell); Landman v. Royster, 333 F.Supp. 621 (E.D.Va.1971) (handcuffed in cell, bread and water diet, corporal punishment, strip cells); Hancock v. Avery, 301 F.Supp. 786 (M.D.Tenn.1969) (strip cell, no bedding, inadequate light and ventilation, deprived of personal hygiene); Inmates of Boys' Training School v. Affleck, 346 F.Supp. 1354 (D. R.I.1972) (juveniles in cold, dark isolation cells with virtually no furnishings).

■ The period of the plaintiff's confinement following August 9, 1972 is a different matter from the cruel and inhuman conditions he suffered from June 8, 1972 through June 12, 1972. The plaintiff is allowed to shower, to have visits with visitors, counselors and clergymen, library privileges, television, radio, hygienic materials, books, clothing and bedding at the present time. The Court concludes that the plaintiff has available to him as good of living conditions as are feasible with life in a 9-foot by 12-foot cell. The plaintiff no longer suffers the extreme deprivations of the earlier period of confinement. Although the Court has found Kelly's present confinement in administrative segregation is a substantial deprivation from the life led by men in the general prison population, it does not rise to the level of "cruel and unusual punishment".

The sensory deprivation of which Dr. Fox addresses himself in his testimony would be severe and result in the harm he anticipates as it relates to the June 8, 1972 to June 12, 1972 confinement. The evidence as to sensory deprivation and its effects under the conditions of confinement for Mr. Kelly at the present time is not so convincing as to raise an issue of cruel and unusual punishment.

### Due Process Claim

The plaintiff's allegations of a denial of "Due Process" are separated into several facets. First the plaintiff complains of being placed in administrative segregation during the period before his murder trial without a prior hearing. This problem was considered by Judge Stuart in a Memorandum and Order with which this Judge fully concurs. Kane v. Brewer, Civil No. 73–153–1 (S.

D.Iowa May 30, 1974). Judge Stuart held that:

Weighing the conflicting interests of the prison authorities, on the one hand, and those of the plaintiff, on the other, the Court is convinced that the balance must be struck in favor of summary placement in administrative segregation for a reasonable length of time while a prisoner's case is being investigated. Until such time as the county attorney has made a determination not to proceed with criminal prosecution of a prisoner, the State's interest in maintaining order and discipline within the prison and in ensuring prompt, just administration of the criminal law with the minimum possible infringement of the constitutional rights of the confined prisoner as a potential criminal defendant far outweighs the prisoner's interest in avoiding the inconveniences attendant to a period of confinement in segregation. Unnecessary delay by a county attorney in reaching a decision cannot be used to justify summary segregation for an unreasonable time. Kane v. Brewer, supra at 6.

This does not mean that the prison administration should be allowed to place an inmate in an extremely punitive confinement as was done in this case. If the prisoner is to be punished or disciplined for an infraction of prison rules it is necessary that he be given a prior hearing. The prison's only legitimate object of summary placement of a prisoner in administrative segregation under facts similar to those in this case is to maintain order, discipline and security in the institution. As stated in Kane v. Brewer, the prison administration must investigate to determine whether "there is good cause to believe the complaint as soon after the incident as practicable".

■ The plaintiff's pre-trial and pre-hearing confinement insofar as it was punitive in nature was in violation of plaintiff Kelly's right to "due process".

■ The second aspect of the plaintiff's "due process" claim causes this Court more difficulty and is most important to the plaintiff as it relates to when and whether he is to be released from "indefinite administrative segregation". The plaintiff complains that there is no meaningful review of his status in "administrative segregation" and that there are no meaningful standards to determine when he should be released from "administrative segregation" and that this is a violation of his right to "due process". The plaintiff complains that the Warden has made a conclusive presumption that he is dangerous solely from the fact of his conviction of murdering the correctional officer and without affording him a hearing to determine the *precise* issue of dangerousness. The plaintiff states that he was tried for murder and not for being dangerous and that if the Warden wished to confine him in "administrative segregation" for being dangerous, he should have a hearing on that issue.

There is no doubt that the "conclusive" or "irrebuttable" presumption is disfavored in the law. Stanley v. Illinois, 405 U.S. 645, 657, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); United States Department of Agriculture v. Murry, 313 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); Cleveland Board of Education v. LeFleur, 414 U.S. 632, 94 S.Ct. 791, 799, 39 L.Ed.2d 52 (1973). In the instance, however, where an inmate has murdered a prison staff member or a fellow inmate within the institution and has been convicted of this crime, it is difficult to conceive of a circumstance where this inmate would not be considered to be a threat to the security of the institution. This Court concludes that the Warden was justified in isolating Kelly from the staff and other inmates until a reasonable decision can be made that he poses no threat to the security of the institution.

■ As the plaintiff states in his brief, he was not sentenced following his conviction of murdering the correctional officer to 90 years in "indefinite administrative segregation" and there are no provisions in the Iowa law for that type of sentence. The only truly valid justification presented by the Warden for his "indefinite administrative segregation" is that he is a threat to the "staff and inmates" of the Penitentiary. The Warden should develop meaningful standards for the exercise of his discretion as to when inmates like Kelly, Clark and Parras are to be released from "indefinite administrative segregation". These inmates should also be given periodic hearings that comport with "due process" to determine whether they still remain a threat to the institution.

This Court realizes the weighty responsibility upon the Warden in making the determination that an inmate should be released from administrative segregation after having killed within the institution and the Court is also familiar with the case of inmate Clark. The valid justification for keeping the inmate in "administrative segregation," however, is that he poses a threat to the security of the institution and whether he continues to pose that threat is a matter that should be continually reviewed under more meaningful standards than those used at present.

At the minimum these inmates should have a comprehensive list of those considerations which enter into the decision as to whether the inmate is a proper subject for release into the general prison population.

■ The final constitutional argument presented by the plaintiff is that his right to "equal protection" is violated by the fact that he is placed in "indefinite administrative segregation" for murdering a correctional officer and is conclusively presumed to be dangerous while other inmates who killed before entering the prison are allowed to enter into the general prison population and are not conclusively presumed to be dangerous.

The Court concludes that this distinction is infinitely reasonable and is a proper approach to maintaining the prison's compelling interest in maintaining security of the institution. The Court finds no violation of "equal protection" in the differing treatment of these two classes of inmates.

It is ordered, adjudged and decreed that the above shall constitute the Findings of Fact and Conclusions of Law in this cause of action and that a judgment shall be entered accordingly.

## JUDGMENT

It is declared that the confinement of the plaintiff in administrative segregation from June 8, 1972 through June 12, 1972 violated the proscription against "cruel and unusual punishment" under the Eighth Amendment to the United States Constitution and violated the plaintiff's right to "Due Process" under the Fourteenth Amendment to the United States Constitution.

It is further declared that the plaintiff's confinement in administrative segregation from August 9, 1972 until April 23, 1973, insofar as it was punitive in nature with privileges taken away that were not necessarily a part of being confined in a single cell, violated the plaintiff's right to "Due Process" under the Fourteenth Amendment to the United States Constitution since there was no prior hearing to this confinement.

It is further declared that the plaintiff's continued confinement in "indefinite administrative segregation" is in violation of his right to "Due Process" under the Fourteenth Amendment to the United States Constitution given there is no meaningful review under appropriate standards to determine whether the plaintiff remains a threat to the security of the institution and thus be continued in "indefinite administrative segregation".

It is ordered, adjudged and decreed that meaningful standards be developed to determine and review the issues relating to plaintiff's "indefinite administra-

tive segregation" and that the plaintiff be given proper periodic hearings under these standards to determine whether he can be released into the general prison population. A plan to accomplish this result with the appropriate standards is to be submitted to this Court within sixty (60) days of the filing of this Order. The plaintiff will not be ordered released from "administrative segregation" at this time.

It is further ordered, adjudged and decreed that the motion for a preliminary injunction ordering the release of plaintiff Kelly into the general prison population is overruled.

It is further ordered, adjudged and decreed that that portion of the plaintiff's cause of action allegedly a violation of Equal Protection under the United States Constitution is dismissed.

It is further ordered, adjudged and decreed that all costs of this action are taxed to the defendant.