**Carol DEDRICK, et al., Plaintiffs,**

**v.**

**Ted WALLMAN, et al., Defendants.**

**Civ. No. 79–360–E.**

United States District Court,

S.D. Iowa, C.D.

April 2, 1985.

---

Mark W. Bennett, Des Moines, Iowa, for plaintiffs.

1. A statutory right. I.C.A. §§ 246.39, .41, .43.

2. I.C.A. § 246.31.

3. The exact parameters of "administrative segregation" in Iowa's correctional system are unclear and, in this Court's experience, have changed over time. *See Kirby v. Keiser*, Civil No. 80–108–E (S.D.Iowa Aug. 9, 1984) (order by

John Parmeter, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

## MEMORANDUM OPINION

### DONALD E. O'BRIEN, Chief Judge.

A hearing was held on the parties' post-trial briefs in Des Moines, Iowa on January 18, 1985. In this order, the Court will decide certain legal issues and then counsel will apply these legal rulings to the individual inmates' situation on a person-by-person basis. Should the parties be unable to agree as to the application of the law to a particular inmate's factual situation, then the Court will make a determination with respect to that inmate.

### I. Liberty Interest.

The State concedes that disciplinary proceedings which result in a loss of "good time" [1], or the imposition of solitary confinement [2], affect a "liberty interest" which is protected by the Due Process Clause. The State contends that no liberty interest is implicated when the only sanction imposed for a major rules violation is "administrative segregation." [3] The State further contends that inmates sentenced to life imprisonment are entitled to no due process protection during disciplinary proceedings because they have no "liberty interest" at stake. The plaintiffs contend that both the Due Process Clause itself and State rules and regulations regarding the imposition of punitive sanctions create the requisite liberty interest.

The Court will not address whether or not the Due Process Clause itself gives rise to a liberty interest because the Court finds that the rules and regulations of the Iowa Department of Social Services Division of Correctional Institution in force and ·effect during the period pertinent in this

Judge O'Brien denying State's post-trial motion). *See also Kelly v. Brewer*, 378 F.Supp. 447 (S.D. Iowa 1974) *aff'd in part, reversed in part*, 525 F.2d 394, 399–400 (8th Cir.1975); *Rhinehart v. Brewer*, Civil No. 77–244–2, slip op. at pp. 4, 8 (S.D.Iowa Oct. 4, 1977) (memorandum and order by Judge Hanson).

lawsuit[4] place substantive limitations on the discretion of prison officials with reference to imposing disciplinary sanctions on inmates.[5] In other words, prison officials may impose administrative segregation as a disciplinary sanction "only on the occurrence of certain acts or events", *Jones v. Mabry,* 723 F.2d 590, 593 (8th Cir.1983), namely, a violation of certain disciplinary rules by the inmate. Quite simply, an inmate has a liberty interest in not being *punished* with the imposition of administrative segregation until he or she has been convicted of a rules violation.[6]

Plaintiffs' Exhibit 32, commonly known as the 804 Policy, is entitled *Policy and Procedure Guidelines: Procedure for Discipline and Control of Inmates.* Rule 804(C), entitled *Procedures for Determining Alleged Rule Violations,* provides in part:

10. At the conclusion of testimony the hearing authority shall, with or without the inmate present, review the testimony and make findings of fact and a decision of guilt or innocent, based on the evidence given. If the inmate did not commit the rule violation, he shall be reinstated to his original status and his record made to show such. If he did commit the rule violation, a dispositional authority, which may be the same as or different from the hearing authority, may impose one or more of the following sanctions:

1—Reprimand.

2—Loss of privileges, such as commissary, movies, television, radio, recreation activities, etc.

3—Confinement to own cell with or without job assignment, after work or on weekends.

4—Transfer to maximum security section (but not isolation).

5—Transfer to any institution in the Bureau (must be in accordance with Section 813–A).

6—Confinement in isolation for not more than ten days.

7—Withholding or forfeiture of the reduction of sentence awarded for good behavior. In addition, the inmate may be scheduled to additional program, therapy, counseling services, etc.

In addition, Rule 804(E), entitled *Failure to Provide Minimum Due Process to Inmates Charged with Rule Violations,* provides in full:

If an alleged rule violation is not adjudicated in accordance with the due process procedures set forth in this Section, no punishment may be imposed for such rule violation, and all records of the alleged violation, including the reporting officer's incident report, shall be expunged from the inmate's treatment and legal files and from any other records which may be subject to review by the Board of Parole.

While Rule 804(C)(10) does not specifically refer to the imposition of "administrative segregation", the Court finds that sanction (4) grants the hearing authority the power to impose administrative segregation. Before this sanction can be imposed by the dispositional authority, a specific substantive condition *must* occur; the inmate must be guilty of a rule violation.

In ruling that administrative segregation imposed for punitive reasons implicates an inmate's liberty interest, the Court is not ruling that administrative segregation can never be imposed except when the due process requirements of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), are met. The Court recognizes that the term "administrative segregation" has

---

**4.** This lawsuit challenges the written decisions rendered in prison disciplinary hearings conducted during the two-year period ending August 9, 1979.

**5.** The importance of the punitive nature of a proceeding when considering whether Rule 804 creates a protected liberty interest can be seen in *Lyon v. Farrier,* 727 F.2d 766 (8th Cir.1984).

**6.** Recently the Eighth Circuit held that the regulations of the Arkansas Department of Corrections create a protectable liberty interest that "inmates will not be confined to administrative segregation until one of the conditions in the regulations exists." *Hayes v. Lockhart,* 754 F.2d 281, 282–83 (8th Cir.1985).

been used as a catchall phrase with different meanings at different points in time.[7] Administrative segregation could have been imposed during the period covered by this lawsuit as a non-punitive measure without the full procedural protections set forth in Rule 804(C). For example, under Rule 804(B)(2)(b), if

> there is reasonable cause to believe that the inmate is (1) dangerous to himself, (2) dangerous to others, (3) in serious danger from others or (4) otherwise a threat to security and good order of the institution

administrative segregation may be imposed in a summary fashion. The imposition of administrative segregation under Rule 804(B)(2)(b) is one example of the use of administrative segregation which is not covered by this Court's ruling because today this Court is addressing only administrative segregation which is imposed as *punishment* for *disciplinary rules violations.*

This Court has reviewed the decision by Judge Hanson in *Rhinehart v. Brewer, supra,* in which inmates at ISP were found to have a liberty interest at stake in disciplinary proceedings which imposed "administrative segregation" as punishment. The key to Judge Hanson's determination that a liberty interest was at stake appears to be the disciplinary nature of the proceedings. The undersigned is convinced that emphasizing discipline and punishment is the proper form of analysis when addressing the issue of whether a liberty interest is at stake.

Were this Court to adopt defendants' position as to the liberty interest issue, serious problems would result. For example, when a hearing committee imposed as a disciplinary sanction only administrative segregation and the inmate had no good or honor time to lose, no due process would attach to that disciplinary proceeding. Thus, prison officials could decide in proceedings which were procedurally defective to impose only administrative segregation and thereby avoid constitutional requirements. Furthermore, unless prison officials entered the disciplinary proceeding with their minds made up as to the sanction to be imposed, they would not know what procedures would be due the inmate under the Constitution. The only sensible position is to hold that inmates have a liberty interest as a result of Rule 804 which is affected when they are placed in administrative segregation as a disciplinary sanction, i.e., punishment, for a rule violation. It would appear that this holding would apply to the progeny of Rule 804, the "Red Rule Book" and the "Blue Rule Book."

Since Rule 804 gives rise to a state created protectable liberty interest,[8] the Court need not consider whether lifers have an independent liberty interest at stake when facing disciplinary proceedings.

Having held that the 804 Policy of the Department of Social Services, Division of Correctional Institutions, gives rise to a state created liberty interest, the Court will proceed to apply that holding to the three institutions which are affected by this lawsuit.

1. *Iowa State Penitentiary.* The Court holds that inmates at ISP have a liberty interest in avoiding sanctions for major rule violations. As a result, when the defendants seek to impose administrative segregation upon an inmate as a punitive sanction, the procedural protections of the Due Process Clause are implicated.

2. *Iowa State Men's Reformatory.* Inmates at the Iowa State Men's Reformato-

---

7. According to the parties' stipulation filed November 23, 1983, the two types of disciplinary confinement in use at the Iowa State Penitentiary (ISP) are presently labeled "disciplinary detention" and "disciplinary segregation." These types of confinement were called "solitary" and "administrative segregation" during the time covered by this lawsuit. Thus, the label "administrative segregation" is of no great moment.

Rather, it is the actual reasons behind the implementation of the status which are important. *See Kelly v. Brewer,* 378 F.Supp., at 449 n. 2.

8. Cf. *McCall-Bey v. Franzen,* 585 F.Supp. 1295, 1300 (N.D.Ill.1984) (Illinois Administrative Regulation 804 does not create a *different* liberty interest from that recognized in *Wolff* ).

ry have a liberty interest in avoiding sanctions for major rule violations. Accordingly, inmates have a liberty interest in avoiding Level A and Level B solitary confinement and Level DD–1, DD–2 and DD–3 disciplinary detention when these types of confinement are imposed for disciplinary reasons.

3. *Iowa Correctional Institution for Women.* Similarly, inmates at the Iowa Correctional Institution for Women have a liberty interest in avoiding "disciplinary cottage confinement" and "administrative segregation" when these types of confinement are imposed for disciplinary reasons.

## II. Adequacy of Factual Findings.

In *Wolff v. McDonnell,* 418 U.S., at 564, 94 S.Ct. at 2978, the Supreme Court addressed the process which was due inmates in disciplinary actions and held "that there must be a 'written statement by the factfinders as to the evidence relied on and the reason' for the disciplinary action." This holding is reflected in Rule 804(C)(12), which provides in full:

> The inmate shall be immediately advised of the decision, the disposition, and the reasons for the disposition, and shall be furnished a written statement of the fact findings as to the evidence relied upon and the reasons for the disciplinary action taken within five working days after the hearing. In those cases where personal or institutional safety may be jeopardized by including certain items of evidence in the written statement furnished the inmate, these items may be deleted. The statement shall indicate that such omissions have been made.

The question before this Court is the adequacy of the written statements about such evidence and reasons by the hearing committee. As it involves the interpretation of the Due Process Clause and *Wolff v. McDonnell,* this question is one of federal law.

The Seventh Circuit has addressed the issue of the adequacy of the written statement required by *Wolff v. McDonnell* in *Hayes v. Walker,* 555 F.2d 625, 633 (7th Cir.1977), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977); *Chavis v. Rowe,* 643 F.2d 1281, 1286–87 (7th Cir. 1981); *Redding v. Fairman,* 717 F.2d 1105, 1114–16 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984), and in each case held that certain written statements did not meet the due process requirements of *Wolff.* The Iowa Supreme Court relied on *Hayes v. Walker, supra,* when it held that the statement:

> Reasons for Decision: Fichtner stated the report is not true and that he did not say anything to the officer. He stated the only time he said anything was when they were approaching a bridge. He denies threatening the officer.
>
> Found guilty based on the officer's report.

*Fichtner v. Iowa State Penitentiary,* 285 N.W.2d 751, 754 (Iowa 1979), was too terse and thus violated plaintiff's due process rights under *Wolff.* The Court notes that the disciplinary decision at issue in *Fichtner* occurred during the time period covered by this lawsuit.

The parties have asked the Court to examine the adequacy of the written statements in the following three categories: (1) Cases where reasons for the specific sanction are not explained; (2) cases where an admission is made; and (3) cases where the officer's report is incorporated by reference.

### A. Incorporation of Officer's Report.

■ In *Hayes v. Walker,* 555 F.2d, at 633, the Seventh Circuit stated:

> The Institutional Adjustment Committee failed in the present case to give an adequate statement as to the evidence relied on or reasons for the action taken. Rather than pointing out the essential facts upon which inferences were based, the Committee merely incorporated the violation report and the special investigator's report. This general finding does not insure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects

based on misunderstanding of the initial decision.

The Iowa Supreme Court relied on this holding in *Fichtner* when it decided that the statement "found guilty based on the officer's report" was too terse. The rationale for such a holding is to "protect the inmate against collateral consequences and to insure that prison officials acted fairly." *Chavis v. Rowe, supra,* at 1287. In addition, the written statement protects an inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence. *Id.*

The Court finds these reasons convincing and holds that, consistent with the line of cases from the Seventh Circuit, reference to the officer's report does not adequately provide inmates with a written statement as to the facts relied on and the reasons for the Committee's conclusions.

### B. Admissions by Inmate.

 The defendants contend that where the factual findings indicate that the inmate admitted to doing the acts charged, there exists an adequate statement of the evidence relied on. Based on the decision in *Redding v. Fairman, supra,* that two of the eighteen summaries were adequate because those summaries indicated the fact that the inmate admitted the conduct charged, this Court holds that defendants' position has some merit. However, merely stating the conclusion that the inmate made an admission is not sufficient because it does not indicate the conduct which the inmate said he did. It is critical to this Court that in *Redding v. Fairman,* the summaries contained the substance of the statements made by the inmates. Thus, where the written statement contains a finding setting forth the substance of the inmate's statement and the statement contains enough information to show the inmate is guilty of the rules violation, it is constitutionally adequate.

For example, the disciplinary decision entered on June 27, 1979 against Mark Vos, Exhibit 25, found the inmate guilty of disobeying an order by having contraband cigarettes. The document entitled "Adjustment Committee Reports" states:

The resident states he just forgot that he had the cigarettes in his pocket.

This written statement adequately sets forth the substance of what the inmate said and is adequate, assuming the inmate received a copy, under *Redding v. Fairman, supra.*

### C. Reasons for Specific Sanction.

 *Wolff* requires that the written statement set forth "the reasons for the disciplinary action taken." Plaintiffs urge this Court to interpret this phrase to mean that the defendants must state the reason for imposing a particular sanction. Defendants contend that it is enough if the statement clearly indicates that the inmate has been found guilty of a specified rule violation. *See Picard v. State,* 339 N.W.2d 368, 372–73 (Iowa 1983).

Plaintiffs argue that specificity is needed because of the wide range of possible penalties for major rule violations. Requiring an explanation of the degree of sanction would further the goal in *Wolff* of assuring fair administrative decision making. Furthermore, plaintiffs argue, where multiple rule violations are charged, it is important to create a record which would allow subsequent adjustment in the event that some of the charges are thrown out on review.

The Court holds that the written statement required by *Wolff* must contain the specific reasons for imposing the particular punishment. *See Craig v. Franke,* 478 F.Supp. 19 (E.D.Wis.1979); *Green v. Nelson,* 442 F.Supp. 1047, 1058 (D.Conn.1977). *See also Redding v. Fairman,* 717 F.2d, at 1115 n. 4. In other words, a statement that an inmate has been found guilty of a rules violation is not a specific enough statement of the reasons for the disciplinary action taken.

### III. Remedy.

The question of the proper remedy is the final issue presently before the Court. Plaintiffs urge the Court to expunge from their records the determinations of misconduct which do not meet the procedural due process requirements of *Wolff.* Defendants argue that expungment is an extreme remedy which should not be invoked in this

case, but rather the defendants should be given the opportunity to supplement the decisions to make them adequate.

A person who violates 42 U.S.C. § 1983 "shall be liable to the party injured in an action at law, suit in equity, or other proper proper proceeding for redress." This provision gives the Court the authority to fashion an equitable remedy for individuals who have been deprived of federally protected rights. Typically, a federal court, sitting as a court of equity, is given wide discretion when fashioning effective equitable relief.

The equitable remedy of expunction is extreme, but is appropriate where an individual's constitutional rights have been denied. The following discussion will focus on the case law dealing with expunction in the context of prison disciplinary proceedings.

> Where an inmate has been denied procedural due process during institutional disciplinary hearings, the equitable remedy of expungment may be available. *See Bradley v. Coughlin,* 671 F.2d 686, 690 n. 9 (2nd Cir.1982). A deprivation of [constitutional] procedural protections, however, does not automatically result in an expungment of the record.

*Coles v. Levine,* 561 F.Supp. 146, 153 (D.Md.1983), *aff'd* 725 F.2d 674 (4th Cir. 1984). Under the methodology adopted by the Seventh Circuit in *Hayes v. Thompson,* 637 F.2d 483, 493 (7th Cir.1980), a district court, once it determines that a prisoner's due process rights were contravened in establishing his guilt of a rules violation, should proceed to the question of whether the constitutional deficiency was harmless. If the constitutional deficiency was harmless, then expunction is not proper. While the court in *Hayes v. Thompson* did not elaborate on the meaning of the phrase "harmless error," the decision of the district court in *McCall-Bey v. Franzen,* 585 F.Supp. 1295 (N.D.Ill.1984), makes clear that harmlessness is not determined with reference to whether or not the particular disciplinary sanction would have been imposed even if the inmate had been given due process. In *McCall-Bey v. Franzen,* the court stated:

[V]iolations resulting in harmless error do not require expunction. *Hayes,* 637 F.2d at 493.

In the case at bar, the unconstitutional conduct of [Warden] Lane justifies expunction of the guilty finding from McCall-Bey's prison records. Given the adverse collateral consequences to plaintiff, the Court cannot find the constitutional violation was harmless error. Thus, McCall-Bey's prison records should be expunged of the guilty finding and adverse collateral consequences on the record should be neutralized by expunction, explanation or other appropriate means.

*Id.,* at 1300. The error in *McCall-Bey* was that the written statement of the fact findings contained in a disciplinary summary was constitutionally inadequate.

■ In view of the foregoing, the Court concludes that the harmlessness of a procedural due process error in the context of the written statement requirement of *Wolff v. McDonnell* must be determined by referring to the reasons underlying the written statement requirement. Written records of the proceedings (1) protect an inmate from collateral consequences based on a misunderstanding of the original proceeding, (2) insure that administrators, faced with possible scrutiny by the public, state officials, and the courts, will act fairly, and (3) prevent disadvantage to an inmate in propounding his own cause to or defending himself from others. *Wolff v. McDonnell,* 418 U.S., at 565, 94 S.Ct. at 2979.

## A. Inadequate Statement Concerning Guilt Determination Stage.

■ When considering written statements which are inadequate as to the evidence relied on and/or the factual findings which were made to support the determination of guilt, there is indeed continuing harm to the inmate because the records may be misunderstood in subsequent use and because the inmate is disadvantaged in defending himself against such use. *See McDonnell v. Wolff,* 483 F.2d 1059, 1064 n. 7 (8th Cir.1973), *aff'd in part, rev'd in part,* 418 U.S. 539, 94 S.Ct. 2963, 41

L.Ed.2d 935 (1974). The argument that a supplemented record would avoid these potential harms is not compelling under the facts of this case. The Court seriously doubts whether these additions to the record would be accurate in fact; it is almost certain that they would be post hoc rationalizations. Thus, the Court concludes that errors of this type which occurred in the written decisions issued during the period covered by this lawsuit are not harmless and expunction will be required. *See Hayes v. Thompson, supra; Ware v. Heyne,* 575 F.2d 593 (7th Cir.1978); *McCall-Bey v. Franzen, supra. See also Powell v. Ward,* 487 F.Supp. 917, 934–36 (S.D.N.Y.1980), *modified,* 643 F.2d 924 (2d Cir.1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981) (expunction as remedy for civil contempt).[9]

B. Inadequate Reasons for Specific Sanction Imposed.

▮ Defendants argue, in effect, that where the constitutional deficiency is the failure to provide specific reason as to why a particular sanction was chosen, expunction is inappropriate when the potential harm to the inmate is weighed against the utility to the state of maintaining the records. In support of this position, defendants cite *Craig v. Franke,* 478 F.Supp. 19, 21–22 (E.D.Wis.1979), wherein the court stated:

Under *Wolff* and *Hayes,* plaintiff was thereby deprived of his right to procedural due process. Thus, while Mr. Craig is not entitled to an order directing that the conduct report be expunged from his

records, to guard against any subsequent misunderstandings, he is entitled to an order directing the committee to add to the report a statement of its reasons for imposing three days of adjustment segregation.

The critical question becomes what potential for harm exists by the retention of records which are constitutionally adequate in other respects but are inadequate because the records do not state the reasons for imposing a particular sanction. Because the inmates have already served the disciplinary "sentences" at issue,[10] the potential for harm arises only when the records are relied upon in making decisions about the inmate's future rights and privileges. *Powell v. Ward,* 487 F.Supp., at 935 n. 16. The potential for harm occurs when the record allows the decision maker considering it to draw unwarranted inferences. Specifically, when the decision maker reviewing the record draws inferences which are harsher than those it would have drawn had written reasons for why the particular sanction was imposed been provided, the inmate is harmed.[11] Consequently, the concern is to what degree prison officials rely on the nature and amount of punishment imposed in the past when making decisions about an inmate's future rights and privileges. In view of the other information contained in the decisions, the Court does not believe such reliance is great. The factual findings as to what conduct the inmate did and the finding he violated a rule are the more critical factors. Furthermore, to the degree that there is reliance on the nature and amount of punishment

9. Because of the period of time which has gone by since the disciplinary decisions were rendered—some may be over seven and one-half years old—the Court holds that prison officials shall be barred from reinstituting disciplinary proceedings for the incidents covered by the expunged decision. *Compare Cuevas v. Scurr,* Civil No. 79–131–1 (S.D.Iowa August 29, 1979) (Stuart, J., held that the prison's own rules prohibit a second disciplinary proceeding) *with* Blue Rule Book, p. II–G–69 (that prohibition relaxed in certain situations).

10. The dominant consideration in requiring prison officials to be specific about their reasons for choosing a particular punishment is to

protect the inmate from arbitrary and unfair punishment. *Redding v. Fairman,* 717 F.2d, at 1115 n. 4. This is particularly true in the instant case where prison officials had wide latitude in determining the amount of punishment to be imposed.

11. Where a disciplinary decision is properly obtained, it is undoubtedly harmful to the inmate to have that decision on his record. Where the decision is accurate, that harm to the inmate is warranted. The "harm" this Court is concerned with is unwarranted harm, i.e., that which would not exist if there had not been a constitutional violation.

imposed, it is not clear that the inmate would be treated less harshly where there is a written statement of the reasons underlying the chosen punishment. Indeed, it seems just as likely that a written statement would harm the inmate as help him. In other words, it does not necessarily follow that the inmate would be in a better position with reference to the future use of the disciplinary decision had the Constitution been followed.

When balancing the potential for unwarranted harm to the inmate and the potential for post hoc rationalizations against the interest of the state in relying on records which comply with procedural due process requirements as far as the guilt determination stage is concerned, the Court will not order expunction of the determinations of misconduct where the only constitutional deficiency is failure to give written reasons for why the particular sanction was chosen.[12] The Court has considered expunction from the records of just the nature and amount of punishment imposed, but prison officials faced with partial records of that type may draw harsher inferences and, as a result, impose greater restriction on an inmate's future rights and privileges than they would with the information viewable.

The remedy for this category of due process violation shall be that the State shall supplement the disciplinary decisions with a statement of its reasons for imposing the particular sanction.[13] When supplying these written statements of the reasons for the specific sanction, the State would be well advised to consider the following statement by the court in *Green v. Nelson,* 442 F.Supp. 1047, 1058 (D.Conn.1977):

[T]he entire text of the reasons for the action taken consists of three words: "Seriousness of offense." This clearly fails the specificity requirements. Cf. *Candarini v. Attorney General of the United States,* 369 F.Supp. 1132, 1137 (E.D.N.Y.1974) (pro forma reasons for denial of parole unconstitutional).

At this point the Court is not ruling that all disciplinary proceedings which result in any degree of sanction for a major rule violation must satisfy the due process requirements of *Wolff.* For example, whether prison officials must comply with *Wolff* before imposing a reprimand, Rule 804(c)(10)(1), for a major rule violation is a question this Court explicitly leaves open. However, when administrative segregation is imposed as discipline at ISP or the corresponding sanctions at the other institutions are imposed, the process due is that which is required by *Wolff.* If after reviewing the facts presented by the individual reports the parties believe those facts require the Court to address the process which is due when lesser sanctions are imposed, then the parties may apply to the Court for such a ruling and reference the factual situations to which the ruling would apply.

IV. Summary.

The parties shall proceed to apply the Court's legal rulings to the factual situation presented by the individual inmate's history. A summary of the Court's legal rulings is as follows:

1) All inmates, including "lifers," have a liberty interest in not being *punished* through the imposition of sanctions for major rule violations.

2) Officer's report shall not be incorporated by reference in the context of determining the adequacy of the written statement requirement of *Wolff.*

3) Written statements which contain the substance of an inmate's admission shall be deemed constitutionally adequate. The mere conclusion that an admission was made is not adequate.

4) The written statement must contain specific reasons for imposing the particular sanction.

5) Where the written statement is inadequate under the above standards, expunction shall be the remedy EXCEPT

12. Expunction may be the appropriate remedy where experience shows that this type of violation is not deterred by merely requiring the record to be supplemented.

13. If the State finds this remedy burdensome, this decision does not foreclose it from choosing expunction.

where the *only* inadequacy is the failure to give specific reasons for imposing the particular sanction. In these situations, the State will be allowed to supplement the misconduct determination.

Counsel for the parties will be given 21 days from the date this opinion is filed to meet and apply the above rulings to the factual situations presented.

IT IS THEREFORE ORDERED that counsel for the parties will meet and work out an agreement on how the legal standards set forth in this opinion should be applied to individual inmates' situations. The parties shall report to the Court within 21 days from the date this opinion is filed. Furthermore, the extent to which the standards set forth in this opinion will apply to the present-day situation at the various institutions will be discussed with counsel when the Court meets with them again before judgment is entered in this case.