Herbert **SPELLER,** Appellant,

v.

**STATE of Iowa,** Appellee.

No. 94–1159.

Supreme Court of Iowa.

July 19, 1995.

---

Philip B. Mears of the Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Layne M. Lindebak, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

In a prison disciplinary proceeding, a disciplinary committee found that a prisoner violated the prison guard's direct order. In his postconviction relief action, the prisoner challenged this finding. He claimed the disciplinary committee violated his procedural due process rights because it failed to (1) consider his defense, or (2) make adequate written findings on it. The district court rejected both arguments and denied the prisoner's application for postconviction relief. We affirm.

On September 14, 1992, correctional officer Bauswell served a major disciplinary report on Herbert Speller for, among other things, disobeying an order to hand over a cup. At the time, Speller was in cell house 319 at the Iowa State Penitentiary on lock-up disciplinary status.

Bauswell's report pertinently stated:

At approx. 8:15 p.m. on the above date while I c/o Bauswell was passing cleaning supplies on L-range, I noticed a cup beside Inmate Speller's # 802779 toilet. I asked Inmate Speller to show me the cup. Inmate Speller stated "if you want to see it, you can come in my cell and look for yourself." I told Inmate Speller again to show me the cup. Again Inmate Speller refused. I gave Inmate Speller [two] direct orders before he got off his bed and reached for a cup on his shelf. Inmate Speller stated "the cup is empty see." I told Inmate Speller I wanted to see the cup next to his toilet. Inmate Speller took the cup he had in his hand[,] put it by his

toilet and picked it up again. I told Inmate Speller I wanted to see the other cup. Inmate Speller again placed the cup in his hand down by the toilet and ... picked it up again and showed it to me. I again told Inmate Speller to show me the other cup. This time Inmate Speller reached down[,] poured something out of the cup by his toilet and stated "you want this cup[?]" I stated I did and Inmate Speller handed me the cup stating "just because you don't like me."

An investigating officer interviewed Speller shortly after this incident. In his report, the officer wrote: "Speller states that the officer comes to his cell and plays around with him. States he thought the officer was playing around with him this time."

Three days following this incident, the disciplinary hearing committee met and found Speller guilty of violating rule 23 (disobeying a lawful order). The rule pertinently provides:

An inmate commits an offense under this subsection when the inmate refuses to obey an order, rule, regulation, or procedure, written or verbal, given by any staff of the department of corrections, or other person in authority.

In its findings of fact, the committee found:

At approximately 8:15 p.m. on 9–14–92 in CH 319, c/o Bauswell was passing cleaning supplies, when c/o Bauswell noticed a cup by Inmate Speller's toilet. C/o Bauswell asked Inmate Speller to hand out the cup. Inmate Speller stated, "If you want to see it, you can come in my cell and look for yourself." Violation # 23.

Again, c/o Bauswell told Inmate Speller to hand out the cup and again, Inmate Speller refused. Two more orders were given when Inmate Speller finally got off the bed, and reached for a cup on his shelf. Inmate Speller stated, "The cup is empty, see." C/o Bauswell told Inmate Speller that he wanted to see the cup by the toilet. Inmate Speller took the cup he had in hand and put it by the toilet, and picked it up again.

C/o Bauswell explained to Inmate Speller that he wanted to see the other cup.

Inmate Speller again showed the cup from the shelf, and again c/o Bauswell told him to show him the other cup. Inmate Speller poured something out of the other cup then showed c/o Bauswell the cup.

Inmate Speller stated to [the] committee that the officer and he play around and he thought the officer was joking around.

In the "evidence relied on" section of its decision, the committee wrote:

Written report of c/o Bauswell. Statement of Inmate Speller.... Inmate Speller did not request witnesses at committee.

Disposition due to inmate's conduct in refusing to cooperate with staff made a difficult job of staff even more difficult.

For punishment, Speller received fifteen days disciplinary detention, loss of ninety days good time, and confinement to a maximum security cell house for ninety days.

Speller's appeals to the warden and to the Iowa department of corrections were denied. In both appeals Speller contended that once he realized the officer was not "playing," he complied with the officer's order.

Speller filed an application for postconviction relief, challenging the committee's decision. *See* Iowa Code § 663A.3 (1991) (now codified as Iowa Code § 822.3 (1995)). Speller admitted he had not obeyed Bauswell's first order because in his words "the officer jokes around with inmates" and that "he, ... Speller, hadn't realized the officer was serious." Speller alleged that despite the presentation of this defense the committee made no findings of fact about it. This failure, Speller asserted, "violates the department of corrections rules and the Constitution which requires a written finding of fact in connection with the discipline."

Disciplinary committee chairperson and administrative law judge Charles Harper testified at the postconviction hearing. Speller's counsel questioned Harper about Speller's defense that he thought Bauswell was playing around:

Q. [Y]ou did not make any factual determination in your finding of fact as to whether or not Mr. Speller actually thought that the officer was playing with him, did you? A. I don't think I made a

determination one way or the other. I believe it was mentioned that he—Mr. Speller made that allegation, but it wasn't determined one way or the other.

Q. [D]id you think it was not necessary to make that determination? A. No, I did not think it was necessary.

Q. ... Wouldn't you have had to have made that determination, however, in trying to determine the appropriate punishment in this case? A. Yes.

. . . .,

Q. Well, my question, Mr. Harper, is did you at any time in connection with this discipline resolve that fact question? A. I don't recall. It's been two years and I don't recall at this time.

Q. But you do agree that it—that fact question should be determined in assessing the particular sanction? A. Yes.

On cross-examination the State solicited this additional information from Harper:

Q. If the disciplinary committee would have found that, in fact, Mr. Speller was just joking around and his defense was considered credible, he wouldn't have gotten 15 days and the loss of 90 days good time and 90 days of cell restriction, would he have? A. No, he would not have.

Q. What would have been his sanction if he would have been found to just be joking? A. Probably at the most a suspended sentence.

Q. Could [he] have gotten a reprimand, too? A. Yes.

Q. Or could have dismissed the report? A. Could have been.

Q. In terms of seriousness of sanction[s] for rule 23, was the sanction given to Mr. Speller fairly severe? A. I believe it was more severe than most violations of rule 23, but I felt that the conduct was more serious than most.

Q. Well, what, in fact—what was serious about the conduct? A. He had a cup and he was told to hand the cup out and then he would not do so. I believe he refused about three—three direct orders and he finally reached for a cup which was a different cup than the one requested.

Then he had to specifically be told which cup he wanted—the officer wanted.

. . . .

Q. Do correctional officers normally give inmates five or six orders and have it be considered just playing around? A. Normally not. I would not think that would be playing around.

And on redirect, Speller's counsel questioned Harper further on this issue:

Q. [D]o you know today in looking at this packet whether you resolved the fact question whether or not Speller simply had thought that the officer was playing around with him? A. If you are referring to something specifically in writing in the decision addressing that, the answer would be no.

Q. And my question is aside from whatever is in writing. A. I think it's pretty obvious from the fact that he received 15 days disciplinary detention, loss of 90 days good time that I didn't—we did not believe that he was playing around.

In denying Speller's application for post-conviction relief, the district court concluded that the committee simply did not believe Speller's defense. Noting Harper's testimony, the court concluded that had the committee believed the defense, it would not have meted out the sanctions it did.

Speller appealed from the district court's decision.

I. *The Issues.*

■ The Supreme Court has enumerated the minimum procedural due process rights prisoners are entitled to in prison disciplinary proceedings. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In enumerating these rights, the Court made it clear that prison disciplinary proceedings are not part of the criminal prosecution. For that reason, the full panoply of rights due a defendant in such proceedings does not apply. The Court noted there "must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 556, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.

■ Among other procedural due process rights, prisoners are entitled to "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 94 S.Ct. at 2978, 41 L.Ed.2d at 955. In *Fichtner v. Iowa State Penitentiary*, 285 N.W.2d 751, 756–59 (Iowa 1979), our court first recognized the procedural due process rights enumerated in *Wolff.*

Speller contends his procedural due process rights under the Fourteenth Amendment to the federal Constitution were violated because he was entitled to have the committee actually deliberate on his defense. He thinks that at best the record is equivocal as to whether the committee considered his defense.

Speller has a fall back position in the event we think the record supports a finding that the committee considered his defense. Speller's fall back position is this: his procedural due process rights were violated because the committee's decision does not indicate that the committee actually determined whether Speller initially thought the officer was joking. Speller would require the decision to spell out that the committee (1) considered this defense, (2) rejected this defense, and (3) why the committee rejected this defense. Speller contends these three steps are required under the *Wolff* guarantee that persons are entitled to a written statement of the evidence relied on and the reasons for the disciplinary action imposed.

Because Speller raises a constitutional question, we review the case de novo in light of the totality of the circumstances. *Rushing v. State*, 382 N.W.2d 141, 143 (Iowa 1986) (citation omitted).

■ A. *Did the committee actually consider Speller's defense?* We agree with the State that Harper's testimony supports a finding that the committee considered Speller's defense and rejected it. In the findings of fact section of the decision, the committee found that "[I]nmate Speller stated to [the] committee that the officer and he play around and he thought the officer was joking around."

Additionally, in the "evidence relied on" section of the decision, the committee stated it relied on Speller's statement as well as Bauswell's. In his interview with the investigating officer, Speller clearly articulated his defense: He thought Bauswell was playing around with him at the time.

In our de novo review, we interpret Harper's testimony this way. He concedes there was no determination one way or the other on Speller's defense. We take this to mean that the decision does not spell out whether such a determination was made. Harper would have to concede that fact. That, however, is not to say that the committee did not actually consider and then reject the defense.

Like the district court, we think Harper's testimony supports a reasonable inference that the committee did consider the defense and rejected it though the decision does not spell this out:

Q. If the disciplinary committee would have found that, in fact, Mr. Speller was just joking around and his defense was considered credible, he wouldn't have gotten 15 days and the loss of 90 days good time and 90 days of cell restriction, would he have? A. No, he would not have.

Q. What would have been his sanction if he would have been found to just be joking? A. Probably at the most a suspended sentence.

. . . .

Q. [D]o you know today in looking at this packet whether you resolved the fact question whether or not Speller simply had thought that the officer was playing around with him? A. *If you are referring to something specifically in writing in the decision addressing that, the answer would be no.*

Q. And my question is aside from whatever is in writing. A. *I think it's pretty obvious from the fact that he received 15 days disciplinary detention, loss of 90 days good time that I didn't—we did not believe that he was playing around.* (Emphasis added.)

From this testimony, we—like the district court—infer that had the committee believed Speller, it would not have imposed the severe penalties it did impose. So we conclude—as

the district court did—that the committee did not believe Speller.

■ One of our recent decisions supports—on a different basis—the result we reach. In *Rushing,* we rejected a contention that the prison disciplinary decision must contain a statement that the committee considered the prisoner's defenses in reaching its decision. We held that the committee could, at the postconviction hearing, explain whether there were other considerations affecting its decision other than those appearing in its written decision. Significantly, we went on to note that

> in a civil law nonjury case where the court has found in favor of a plaintiff, on review we assume the district court considered and rejected each defense of the defendants on its merits even though it was not discussed in the ruling. By analogy, we should be able to give the same regard to a decision of a disciplinary committee as to what the committee considered in reaching a decision on the charges made even though the decision does not state all the items of evidence the committee considered and rejected.

*Rushing,* 382 N.W.2d at 145 (citations omitted).

■ Here, unlike in *Rushing,* the committee did make mention of Speller's defense. What the committee did not do was to state specifically whether it rejected the defense. Under the *Rushing* holding, we may assume from the decision the committee considered and rejected Speller's defense.

That brings us to Speller's fall back position.

B. *In its decision, did the committee have to spell out that it (1) considered Speller's defense, (2) rejected this defense, and (3) why the committee rejected the defense?* Speller's fall back position is more problematic. In *Fichtner,* this court had before it a prison disciplinary decision that gave the following reasons for the decision: "Found guilty based on the officer's report." Concluding that this was too terse, the court explained:

> An elaborate opinion is unnecessary, yet the *committee had to state, at least briefly, the evidence relied on and the reasons for the discipline inflicted.*

*Fichtner,* 285 N.W.2d at 760. In support of its explanation, the court cited the following passage from *Hayes v. Walker,* 555 F.2d 625, 633 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977):

> Rather than pointing out the essential facts upon which inferences were based, the committee merely incorporated the violation report and the special investigator's report. This general finding does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision.

In *Walker,* the disciplinary committee gave the following reasons for its decision in response to the prisoner's inquiry:

> The committee's decision is based on the violation report as written and upon the report by the special investigator which during your absence was made part of the record.

*Walker,* 555 F.2d at 631. The *Walker* court held that this statement failed to give the prisoner an adequate statement as to the evidence relied upon to support the disciplinary action taken as required by *Wolff. Id.*

In a later Seventh Circuit case, the court found prison authorities violated the prisoner's procedural due process rights when it failed to provide him with a written statement giving facts relied on in finding him guilty and reasons for the conclusions reached. *Chavis v. Rowe,* 643 F.2d 1281, 1287 (7th Cir.1981). In its decision, the disciplinary committee simply said: "We recognize and consider the resident's statement, however, we accept the reporting officer's charges." *Id.* The court concluded this terse statement did not meet the *Wolff* requirements of a written statement with fact findings as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* Significantly, the court found that the statement for procedural due process purposes was inadequate because

> [i]t did not mention what evidence the reporting officer relied on, the investigato-

ry report containing exculpatory evidence, or [an] earlier report. It gave no clear indication of why the reporting officer was to be believed rather than [the prisoner] or [the victim, whose testimony favored the inmate].

*Id.*

Additionally, the court concluded the statement violated the prisoner's substantive due process right "not to be found guilty except by an appropriate quantum of evidence." *Id.* As the court explained, "[w]ithout a detailed statement of the committee's findings and conclusions, a reviewing court (or agency) cannot determine whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights." *Id.*

In a more recent Seventh Circuit case, the court added an additional requirement: when facts are in dispute, the committee should give "reasons ... for discounting the [prisoner's] contradictory evidence." *Redding v. Fairman,* 717 F.2d 1105, 1115 (7th Cir.1983).

In *Dedrick v. Wallman,* 617 F.Supp. 178, 183 (S.D.Iowa 1985) (mem.) (reviewing practices at three Iowa prisons), a local federal district court ruled that "reference to the officer's report does not adequately provide inmates with a written statement as to the facts relied on and the reasons for the committee's conclusions." In reaching this conclusion, the court relied on *Hayes, Chavis, Redding,* and *Fichtner. Dedrick,* 617 F.Supp. at 182–83.

One year after *Dedrick,* the Eighth Circuit Court of Appeals had occasion to decide a similar issue and rejected the Seventh Circuit line of cases, notably *Hayes* and *Chavis.* In doing so, we think the court impliedly overruled *Dedrick* and rejected *Fichtner* which followed *Hayes. See Brown v. Frey,* 807 F.2d 1407, 1412–13 (8th Cir.1986) (statement of reasons for disciplinary action which indicated that disciplinary committee relied on conduct violation report as well as memorandum written by prison officials in reaching its decision was adequate though it did not indicate particular portions of the report relied upon).

In *Brown,* the report stated the Missouri disciplinary committee relied on the following in reaching its decision:

1. Relied on C.V. and additional report.
2. No C.V.'s for past 9 months.
3. Relied on # 5 definition.

■ The court's rationale for holding that this statement of the evidence relied upon was adequate for procedural due process purposes was this:

[T]he balance between the penological interest in avoiding excessive administrative burdens in order to use disciplinary proceedings to assure institutional safety and promote rehabilitation, on the one hand, and the interests of the individual inmate, on the other, is such that the due process clause does not require "technical and detailed disciplinary reports." The requirement is satisfied if the written statement, even though "sparse in content," is "sufficient to inform [the inmate] of the evidence relied upon by the factfinders in reaching their decision to take disciplinary action." This ensures that disciplinary [committees] will not act arbitrarily, and it forces a disciplinary [committee] to commit itself, contemporaneously with its decision, to certain evidence, thus allowing a reviewing body to fairly and accurately review the incident that led to the proceeding or the proceeding itself. After this, due process requires no more, and it certainly does not dictate that we expose a disciplinary [committee's] written statement to such extensive scrutiny that we fail to adequately respect "the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation."

*Brown,* 807 F.2d at 1412 (citations omitted). We agree with and adopt this rationale. Like the Eighth Circuit, we reject any notion that "the *Wolff* written statement requirement can never be satisfied when the written statement refers to certain reports but fails to expressly indicate what statements in those reports the disciplinary [committee] relied on in reaching its decision." *Id.* at 1412–13.

■ As *Brown* points out, *Wolff* only requires that the written statement contain the "*evidence* relied upon." *Id.* at 1413. Reports referenced in a disciplinary committee's decision qualify as evidence. *Id.*

■ We also agree with the following admonition in *Brown:*

There may be situations, however, when the procedural due process balancing test would dictate that a disciplinary [committee] refer to specific statements in a report rather than simply incorporating the entire report by reference. For example, a certain report may be so lengthy that a reference to the entire report does not satisfy due process, or the report may contain contradictory or ambiguous statements, making it difficult to ascertain with certainty what statements in the report the [committee] relied on in reaching its decision.

*Id.*

■ We think, too, that disciplinary committees should heed the following advice in *Brown:*

While the due process clause may not require it, we suggest that in the future disciplinary [committees] always exercise an abundance of caution and refer to specific statements in reports, or, at the very least, attach to the written statement those reports specifically referenced in the written statement.

*Id.* at 1413–14.

As *Brown* points out, the written statement (1) assures that a disciplinary committee does not act arbitrarily, and (2) guarantees that a reviewing body can fairly and accurately assess any claims a prisoner makes as to the nature of the incident or the propriety of the proceeding. *Id.* at 1414. Requiring a disciplinary committee to make a written statement as to the evidence relied on (1) forces a disciplinary committee to commit itself, contemporaneously with its decision, to certain evidence and reasons, and (2) guarantees that the prisoner is not placed at a disadvantage. *Id.* The disadvantage, of course, is forcing the prisoner to (1) explain the incident, or (2) claim that a committee's explanation was put together after the pris-

oner has forwarded the claim. *Id.* When we view the statements against this background, we agree with *Brown* that there is no meaningful difference between a written statement that incorporates statements in a report by reference and one that repeats the statements from the report. *Id.*

Because we embrace the rule and reasoning in *Brown,* we necessarily overrule anything in *Fitchner* to the contrary. We also note that our own court of appeals recently followed *Brown.* See *Pierce v. State,* 433 N.W.2d 38, 39 (Iowa Ct.App.1988) (statement of evidence by disciplinary committee was adequate to satisfy due process when it indicated committee's reliance on evidence contained in written reports of two correctional officers).

■ Here, in its written decision, the committee said it relied on Bauswell's report and Speller's statement to the investigating officer. Neither Bauswell's statement nor Speller's statement is lengthy. There are no inconsistencies or ambiguous statements in the officer's report or Speller's statement. Speller in fact does not dispute that he violated Bauswell's order. He simply said he thought the officer was joking. In addition, the committee made specific findings of fact from Bauswell's report and noted that Speller thought the officer was joking.

To us, as a reviewing court, it is very apparent what the committee decided and why: Speller violated a direct order, and Speller's defense was not credible. In these circumstances, we conclude that the committee's statement of the evidence it relied upon satisfied due process.

II. *Disposition.*

In sum, we conclude the committee considered and rejected Speller's defense. In addition, the committee's statement of the evidence it relied upon satisfied due process. The district court correctly denied Speller's application for postconviction relief. We therefore affirm.

**AFFIRMED.**