Fred Louis PLETKA, Appellant,

v.

Crispus C. NIX, John Emmett, and
other state employees unknown
at this time, Appellees.

Fred Louis PLETKA, Appellee,

v.

Crispus C. NIX and John Emmett, and
other state employees unknown at
this time, Appellants.

Nos. 90–2191, 90–2192.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1991.

Decided Sept. 10, 1991.

Rehearing and Rehearing En Banc
Granted; Opinion and Judgment
Vacated Oct. 28, 1991.

Martha M. McMinn, Sioux City, Iowa, for appellant.

William A. Hill, argued (Thomas J. Miller, Gordon E. Allen and William A. Hill, on brief), Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Fred L. Pletka, an inmate at the Iowa State Penitentiary, appeals the district court's [1] order denying his claim for damages resulting from prison officials' alleged violation of his rights under the due process clause. Pletka was under punitive segregation in Iowa when he was transferred to the Texas prison system and released into the general population. The district court found that Pletka's due process rights were violated when he was transferred back to Iowa and was returned to punitive segregation without a hearing. Although the court ordered the officials to "reflect [Pletka's] release into general population in Texas as a completion and exoneration of his disciplinary sentence," the court found that qualified immunity barred Pletka's claim for damages. The state cross-appeals the court's holding that the prison officials violated Pletka's due process rights. We affirm the district court's finding that Pletka's due process rights were violated, but reverse the court's finding of qualified immunity.

*Background*

While a prisoner at Iowa State Penitentiary, Pletka was placed in punitive segregation for disciplinary reasons. Before he had completed his term of segregation, Pletka was transferred to the Texas prison system under the Interstate Corrections Compact (ICC), *see* Iowa Code § 247.2 (Supp.1991), where he was released into the general prison population. Upon return to the Iowa State Penitentiary officials immediately placed Pletka back into administrative segregation without any form of due process hearing.

*Due Process*

Pletka claims that his release into the general prison population in Texas created a protected liberty interest such that he

could not be removed from the general population to a more restrictive prisoner status without some type of due process review. He relies on *Hayes v. Lockhart*, 754 F.2d 281 (8th Cir.1985), which involved a similar situation where an Arkansas prisoner held in administrative segregation was transferred to Florida and released into the general population. When the prisoner was returned to the Arkansas prison he was immediately placed in administrative segregation and received a hearing fifteen days later. *Id.* at 282.

This court held that based on Arkansas regulations [2] the prisoner "had a protectible liberty interest in being assigned to the general prison population upon his return to Arkansas." *Id.* In reaching this conclusion, the court found that under the ICC "[the prisoner's] release into the general prison population in Florida was equivalent to a release into the general prison population in Arkansas." *Id.* at 283 n. 1.[3]

In the present case there is no question that some type of due process is necessary before a prisoner is placed into punitive segregation. *See Wolff v. McDonnell*, 418 U.S. 539, 565–66, 94 S.Ct. 2963, 2979–80, 41 L.Ed.2d 935 (1974). The state instead contends it is not bound by the Texas prison officials' decision to place Pletka into the general population. It argues that Pletka is not entitled to due process because for Iowa's purposes he was never discharged from punitive segregation, and presumably he received due process at the initiation of his segregation. In other words, the state did not return Pletka to punitive segregation because he never left it (despite the fact that he was released into the general population in Texas). Indulging in the fiction that Pletka never left punitive segregation, the state concludes

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

2. Arkansas regulations created an expectation that Arkansas inmates would not receive administrative detention except under the three circumstances outlined in the regulation. *Id.* at 283 n. 1.

3. Ultimately, however, the court held that the due process clause was satisfied when prison officials held a due process hearing fifteen days after the prisoner's return to administrative segregation. *Id.* at 283.

that a due process hearing was not required to maintain the status quo.

This argument is contrary to our decision in *Hayes* and the plain language of the ICC. The ICC has been enacted by more than half the states to facilitate transfer of prisoners for economic or other reasons. *See, e.g.,* Iowa Code § 247.2 (Supp.1991). Iowa's version of the statute makes clear that when a prisoner is transferred pursuant to the ICC, "the receiving state [is] to act in that regard solely as agent for the sending state." *Id.* at Art. IV. Furthermore, "[i]nmates confined in an institution pursuant to the terms of [the ICC] shall at all times be subject to the jurisdiction of the sending state...." *Id.* The receiving state is required to send conduct records to the sending state "in order that each inmate may have official review of the inmate's record in determining and altering the disposition of said inmate *in accordance with the law which may obtain in the sending state....*" *Id.* (emphasis added). Finally, the ICC provides that "[a]ny hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state, or of the receiving state if authorized by the sending state." *Id.* These provisions make clear that the sending state retains complete authority over a prisoner transferred under the ICC and that the receiving state acts solely as an agent for the sending state.[4]

Thus, as we held in *Hayes*, the prisoner's "release into the general prison population

in [the receiving state] [i]s equivalent to a release into the general prison population in [the sending state]." 754 F.2d at 283 n. 1. Because Texas prison officials acted only as agents for Iowa in maintaining physical custody of Pletka, their release of him into the general population must be deemed an action made on behalf of Iowa. Iowa is bound by the actions of its agent.

The state would distinguish *Hayes* because that case involved administrative segregation while Pletka was under punitive segregation. The state presumes that a hearing to consider Pletka's return to punitive segregation would be futile because the segregation was punishment for past conduct. In contrast, the state contends that a hearing makes sense with regard to administrative segregation because this status is based on circumstances or conditions that may change and afford a basis for changing the prisoner's status. This contention has little relevance in light of the fact that Iowa had effectively released Pletka from punitive detention through the actions of Texas officials under the ICC.[5] Once Pletka was released a new liberty interest in general population status attached and the state was obligated to assert some basis for reinstating the restrictive status. Pletka's return to punitive segregation in Iowa was new punishment subject to due process requirements. *See Wolff,* 418 U.S. at 555–56, 94 S.Ct. at 2974. Because the state did not provide Pletka any due process when it returned him to punitive segregation, we affirm the district court's holding that Iowa prison officials violated Pletka's due process

---

4. We do not imply that the receiving state cannot exercise its authority to provide for discipline and safety in its own facility. As we noted in *Stewart v. McManus,* 924 F.2d 138 (8th Cir. 1991), the ICC provides that transferred inmates must be treated equally with prisoners from the receiving state, and this necessarily includes being subject to the same institutional rules and procedures. *Id.* at 141. We held that under the Iowa–Kansas Compact and implementing contract the receiving state may apply its own disciplinary procedures for violations that occur in the receiving state after the prisoner is transferred. *Id.* This case differs from *Stewart* because it involves the receiving state's enforcement of an unexpired disciplinary action initiated by the

sending state. Nothing in *Stewart* suggests that the receiving state's right to enforce discipline in its own facility supersedes its obligation to act as agent for the sending state with regard to an unexpired sanction.

5. The dissent overlooks the district court's finding of fact that Pletka's release into the general population was "a completion and exoneration of his disciplinary sentence." *Pletka v. Nix,* Civ. No. 88–1355–A (June 18, 1990) (slip op. at 2–3). The state does not challenge that finding on appeal. Contrary to the dissent, based on the district court's finding, our opinion is based on the liberty interest of the petitioner.

rights.[6]

*Qualified Immunity*

 The doctrine of qualified immunity shields government officials from personal liability when the officials can show that they exercised good faith in attempting to conform their actions to clearly established constitutional law. *J.H.H. v. O'Hara,* 878 F.2d 240, 243 (8th Cir.1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 1117, 107 L.Ed.2d 1024 (1990). To overcome qualified immunity Pletka must show that the Iowa officials violated his rights in contradiction to clearly established law. *Id.* This is a pure question of law reviewed de novo. *Coffman v. Trickey,* 884 F.2d 1057, 1062–63 (8th Cir.1989), *cert. denied,* ── U.S. ──, 110 S.Ct. 1523, 108 L.Ed.2d 763 (1990).

 The clearly established law in this case starts with *Hayes,* decided more than two years before Pletka was returned to punitive segregation in Iowa. The *Hayes* decision established that, under the ICC, release of a prisoner into the general population by a receiving state is "equivalent" to a release by the sending state. 754 F.2d at 283 n. 1. This decision put the Iowa prison officials on notice that Pletka's release into the general population by Texas authorities would constitute a termination and exoneration of his punitive segregation

sentence. Thus, based on his release in Texas, Pletka returned to Iowa without pending sanctions and with a legitimate expectation of general population status.

Nonetheless, upon Pletka's return from Texas the Iowa officials placed him in punitive segregation without a due process hearing. The Supreme Court has clearly established that the imposition of punitive sanctions upon inmates by prison officials is subject to procedural due process requirements. *Wolff,* 418 U.S. at 555–56, 94 S.Ct. at 2974–75. Even closer to the point, the *Hayes* decision established that, under Arkansas regulations, a transferred prisoner released from administrative segregation in the receiving state "ha[s] a protectible liberty interest in being assigned to the general prison population under his return to [the sending state]." 754 F.2d at 282. The state concedes that procedural due process is required for the imposition of *new* punitive sanctions, and relies only on its interpretation of the ICC for its conclusion that due process was not required for reinstatement of what it characterizes as a continuing sanction. As discussed above, we rejected the state's interpretation of the ICC in *Hayes.* Iowa is bound by its agent's release of Pletka into the general population. Thus, we can only view Iowa's reimposition of Pletka's punitive segregation as a new sanction, and as such *Wolff*

6. The dissent is concerned that it would be pointless to hold a due process hearing for a return to punitive detention. However, even assuming that Pletka could be returned to punitive detention after being released into the general population, we think he still would be entitled to know why prison officials were reinstating his detention. Otherwise he might think he was being detained for some other reason or perhaps for no reason. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff,* 418 U.S. at 558, 94 S.Ct. at 2976. We do not see how this due process right can be vindicated if the state could pluck a prisoner out of the general population and put him into punitive detention without a word of explanation.

Furthermore, whether his punitive detention was new or renewed, Pletka should have had the opportunity to substantively challenge his impending detention as inequitable or illegal. A review hearing upon reinstatement of a past punitive sanction would not be futile. It is not

uncommon that a punitive sanction is lifted before its stated term expires. Prisoners are paroled, pardons are issued, and clemency is granted all based on the principle that a prisoner's behavior may improve or other circumstances may change making the punishment no longer necessary or appropriate. Even if the state was entitled to reinstate Pletka's punitive sanction after his release in Texas, a review hearing would allow Pletka to show that he behaved well in the general population and to argue that his sanction has served its purpose. Since punitive sanctions at least sometimes are intended to deter bad conduct and encourage rehabilitation, it would be cynical to hold that review hearings are pointless when such sanctions are involved. It also would be contrary to Iowa prison policy. *See* Iowa Code § 246.-505(1)(a) (1991 Supp.) (prisoner sanctions should be "imposed only at such times and to such a degree as is necessary to regulate inmate behavior within the limits of the disciplinary rules and to promote a safe and orderly institutional environment").

clearly directed the state to provide due process.

The state's efforts to distinguish *Hayes* are unavailing. As discussed above, the proposed distinction between punitive and administrative segregation is immaterial, and assuming the prison officials consulted *Hayes*, the case offers no encouragement to that theory.[7]

Finally, the state argues that the law established in the *Hayes* decision was rendered unclear when a district court dismissed a previous claim filed by Pletka, with a similar issue, one year after this court decided *Hayes*. The record does not indicate whether Pletka appealed the prior dismissal, but in any event the law in this circuit is not changed when a district court opinion conflicts with a circuit court opinion. No competent attorney would rely on a lower court opinion when confronted with a contrary appellate ruling directly on point, and this includes the attorneys who advise Iowa's prison officials. Any reliance by the prison officials on the district court's opinion in Pletka's prior action was unreasonable in light of the *Hayes* decision.

We find that the prison officials are not entitled to qualified immunity and reverse the district court on that issue. The opinion of the district court is affirmed in part, reversed in part, and remanded for proceedings in accord with this opinion.

ARNOLD, Circuit Judge, dissenting.

I would affirm the judgment dismissing Pletka's complaint, not because of any flaw in the Court's qualified-immunity analysis, but simply because Pletka's due-process rights have not been violated.

The Court's opinion appears to be completely logical. Its reasoning consists of the following steps: (1) In Iowa, prisoners in the general population have a "liberty interest" in not being transferred to more restrictive conditions of confinement, either for administrative reasons, as was the case in *Hayes v. Lockhart*, 754 F.2d 281 (8th Cir.1985), or for disciplinary or punitive

reasons, see *Wolff v. McDonnell*, 418 U.S. 539, 565–66, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974); (2) When Texas transferred Pletka to the general population, it acted as the agent of Iowa under the Interstate Corrections Compact, see Iowa Code § 247.2 (Supp.1991); and, therefore, (3) Pletka may not be re-transferred into punitive segregation without a new due-process hearing.

The fault in this analysis lies, I believe, in the third step, or perhaps in the transition from the second to the third step. I accept the fact that the case must be treated exactly as if Iowa, rather than its agent, Texas, had released Pletka into the general population. The true basis of the Court's holding, however, is not the basic rule that prisoners in the general population have a "liberty interest" in staying there, but rather that Pletka's release into the general population was a sort of pardon—a complete satisfaction of the penalty that had been imposed upon him for a disciplinary offense before his transfer to Texas—even though there was still some time to run on that penalty. Thus, although the Court states the case as if it involved procedural due process ("Iowa ... placed Pletka back into administrative segregation without any form of due process hearing," *ante* at 917), it is really based on a substantive holding. A prisoner who is returned to the general population before serving all of his disciplinary time, the Court says, has paid his punitive debt completely. The original sanction has been satisfied, and no new sanction may be imposed absent a new offense and a new due-process hearing. In Pletka's case, of course, no one claims that a new offense has been committed. Accordingly, there is no issue that a new due-process hearing could address. Pletka has served his time, and he has a federal constitutional right to remain in the general population.

The trouble is that the Court cites no law whatever, and I know of none, to support such an extraordinary conclusion. *Hayes*

---

7. The state also asserts that *Hayes* is not clearly established law because its vital language is found in a footnote. The proposition that foot-notes somehow do not count can be dismissed without further comment.

involved administrative segregation, not punitive. A new hearing meant something in *Hayes*—it could consider whether, for security reasons, for the inmate's own good, or for some legitimate administrative purpose, Hayes should be returned to more restrictive conditions of confinement. Here, a hearing would mean nothing. Pletka has already received his hearing, but on the Court's reasoning the consequences of that hearing have been fully exhausted. *Hayes* holds only that the receiving state is the agent of the sending state. It does not hold that release into the general population of an inmate who has been subjected to disciplinary sanctions is a complete satisfaction of the disciplinary penalty. If there were a statute, a regulation, or even a prison practice in Iowa to this effect, I could understand the Court's result. But there is no such law or practice—none, at least, that either the Court or the parties have identified. And surely no one would contend that the Due Process Clause of the Fourteenth Amendment, of its own force, creates any such entitlement.

The Court suggests, *ante* at 919 n. 6, that a new hearing, in advance of returning Pletka to punitive detention, could conceivably serve some purpose. The suggestion is somewhat speculative, not based on anything concrete in the record or on any argument made by the parties. The suggestion seems also to contradict the Court's main thesis, that Pletka's release into the general population while in Texas completely satisfied his punitive "sentence." Even if the Court's suggestion has merit, I would still affirm this judgment. The bases of the Court's reasoning, and the ingenuity it shows in developing possible reasons for a new hearing, demonstrate, at the very least, that the case is not sufficiently clear to survive a qualified-immunity defense. The Court's holding today goes significantly beyond *Hayes*, in which the kind of hearing of which the inmate was deprived was clear. I think it places too great a burden on prison officials to require them to anticipate such a legal development, especially when the result may be a personal judgment against them for money damages.

For these reasons, I conclude that Pletka has received all the process he is due.[1]

### ORDER

Oct. 28, 1991.

The petition for rehearing with suggestion for rehearing en banc has been considered by the court and is granted. The opinion and judgment of this court filed on September 10, 1991, are vacated.

The parties are directed to file supplemental briefs not to exceed fifteen pages in length.

This case will be argued, January 6, 1992, at 9:00 a.m., in St. Louis, Missouri.

---

**1.** I agree with the Court that footnotes can be important.