Fred Louis **PLETKA**, Appellant,

v.

**Crispus C. NIX, John Emmett, and other state employees unknown at this time, Appellees.**

Fred Louis **PLETKA**, Appellee,

v.

**Crispus C. NIX and John Emmett, Appellants,**

**and other state employees unknown at this time.**

Nos. 90–2191SI, 90–2192SI.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 6, 1992.

Decided Feb. 28, 1992.

Martha McMinn, Sioux City, Iowa, argued, for appellant.

William A. Hill, Des Moines, Iowa, argued (Thomas J. Miller and Gordon E. Allen, on brief), for appellees.

* The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed.

Before LAY, Chief Judge,* McMILLIAN, ARNOLD,** JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, and HANSEN, Circuit Judges, en banc.

ARNOLD, Circuit Judge.

This is an action under 42 U.S.C. § 1983 brought by Fred L. Pletka, an inmate at the Iowa State Penitentiary, against two prison officials. In 1986, Pletka was in disciplinary confinement. No one denies that he was accorded due process before being punished in this way. Late that year, Iowa transferred him to the Texas prison system under the Interstate Corrections Compact, see Iowa Code Ann. § 247.2 (West Supp.1991). Shortly after Pletka arrived in Texas, the Texas prison authorities placed him in the general population. When he returned to Iowa, he was put back in disciplinary confinement without a new hearing. Pletka contends that these events deprived him of liberty, his right to be in the general prison population, without due process of law.

The District Court agreed, holding that the Texas prison system's action completely satisfied the disciplinary "sentence" that Pletka had previously received in Iowa. Pletka could not be returned to disciplinary confinement, therefore, the Court held, without some sort of new process. The Court issued an injunction commanding the defendants to change their records to show that Pletka had fully served his disciplinary time, and to return him to the general population. It declined to award any money damages, however, on the ground that the defendants were entitled to qualified immunity. On appeal, a panel of this Court, one judge dissenting, affirmed in part and reversed in part. *Pletka v. Nix*, 943 F.2d 916 (8th Cir.1991). The panel agreed with the District Court that Pletka's due-process rights had been violated, but did not believe that the defendants were protected against an award of damages by

** The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

the defense of qualified immunity. The dissenting judge took the position that none of Pletka's rights had been violated. We granted the defendants' suggestion for rehearing en banc, thus vacating the panel opinion and the judgment entered in accordance with it.

### I.

■ The District Court ruled on cross-motions for summary judgment. The facts are simple and undisputed. In 1986, Fred L. Pletka, an Iowa inmate serving a life sentence, was in disciplinary segregation for infractions he had committed since 1981. No one contends that the process leading to plaintiff's initial placement in disciplinary confinement was legally defective in any way. On December 20, 1986, plaintiff was transferred to Texas under the Interstate Corrections Compact. At that time, he had accumulated disciplinary "sentences" that would have lasted until March of 1989. On January 5, 1987, Texas prison authorities released Pletka into the general prison population. In September of 1987, Pletka was returned to Iowa. There, prison authorities returned him to disciplinary confinement. He was not given a new hearing. Defendants' action was based on their belief that Pletka was "required to serve the remainder of [his] time when [he] ... return[ed] to the sending state." Affidavit of John Emmett, Correctional Security Director at the Iowa State Penitentiary, ¶ 9, Appellant's Appendix 12.

This is all we know about the case of any consequence. Plaintiff was unable to suggest what kind of hearing could or should have been held upon his return to Iowa. He takes the position, instead, and the panel opinion essentially agreed, that Pletka's release into the general prison population in Texas was a complete exoneration of his Iowa disciplinary sanctions. Accordingly, he could not be returned to disciplinary confinement in Iowa at all, unless he committed a new infraction, which no one suggests. We do not know why Texas took Pletka out of disciplinary confinement and placed him in its own general prison population. We do not know what form of

words, oral or written, if any, was used to describe this action in Texas, or to explain it to Pletka. We do not know whether the Texas authorities told Iowa what they had done. We do not even know whether Texas was aware that Pletka had been in punitive status in Iowa.

Plaintiff's main reliance is on our opinion in *Hayes v. Lockhart*, 754 F.2d 281 (8th Cir.1985). In *Hayes*, an Arkansas prisoner held in administrative segregation was transferred to Florida, where he was released into the general population. Upon his return to Arkansas, he was immediately returned to administrative segregation. This Court held that the inmate was entitled to due process before Arkansas could return him to administrative confinement. In the particular case, the inmate did not prevail, because we held that a hearing given him 15 days after he was returned to administrative segregation was sufficient to satisfy the Due Process Clause of the Fourteenth Amendment. The case is cited for two propositions relevant here: (1) that the inmate, upon his return to the sending state, could not be returned to a special confinement status without a new hearing; and (2) that under the Interstate Corrections Compact, the receiving state, Florida, acted as agent for the sending state, Arkansas, and Florida's release of the inmate into the general population was therefore the legal equivalent of a release into the general prison population in Arkansas. *Hayes*, 754 F.2d at 283 n. 1.

On this reasoning, Pletka claims that Texas acted as Iowa's agent when it released the plaintiff into the general prison population. The legal effect of this release was exactly the same as if it had occurred in Iowa. We agree with plaintiff that *Hayes* stands for these propositions. But there is a crucial difference between *Hayes* and the present case. Hayes was not being punished. He was not in disciplinary confinement on account of past bad acts. He was in "administrative segregation," a term which, under the Arkansas prison regulations, carried no punitive implications. It meant only that, for reasons of administrative convenience, protection of the inmate or others, or the like, prison authori-

ties considered it appropriate to impose upon the inmate conditions of confinement more restrictive than those applying to the general population. These sorts of conditions typically change from time to time. A threat to an inmate may disappear, for example, when the prisoner who is the source of the threat is released or transferred to another institution. The passage of time, therefore, makes it entirely appropriate for circumstances to be carefully re-examined, and any changes in conditions assessed, before a prisoner who has been absent for a considerable period is returned to the special conditions of confinement to which he was subject when he left the sending state. Pletka's situation is quite different. He was in special confinement, to use a generic term, because of past rules infractions. A hearing determining his guilt and punishment had already been held. There was nothing for a new hearing to address. He simply had to serve out his time.

The panel opinion, 943 F.2d at 919 n. 6, suggests that there were purposes that a new hearing could have served. Pletka could at least have been told why his detention was being reinstated, it is argued. Furthermore, review hearings could have been held to determine whether punitive sanctions should have been lifted before their stated term expired. Pletka might have been able to show, for example, that while in the general population in Texas he had behaved well. This demonstration of rehabilitation, it is argued, might have persuaded the Iowa authorities, if they had given Pletka a hearing, not to return him to punitive confinement. The suggestions are ingenious, but we think they have nothing to do with the present case. In the first place, Pletka does not claim that he was in the dark as to the reasons for Iowa's returning him to punitive confinement upon his return from Texas. It was quite clear, and Pletka knew, that the Iowa authorities thought he still had time to serve on the previously imposed disciplinary sanctions. Secondly, Pletka has never claimed, either

in the District Court or in this Court, that he had a right to the kind of "review hearing" referred to by the panel. His position is simpler: his release into the general prison population in Texas extinguished the Iowa disciplinary sanctions, and he could not be returned to punitive confinement in Iowa in the absence of a new infraction.

■ We turn, then, to this key question. What was the legal effect of the Texas action? Was it a sort of pardon, a complete forgiveness and exoneration of the punishment imposed for Pletka's multiple offenses while at the Iowa State Penitentiary? The panel opinion answered this question in the affirmative. We do not. Plaintiff cites no law, either statute, regulation, or prison practice, to support such a result. The panel opinion, 943 F.2d at 918 n. 5, argues that the District Court found as a fact that Pletka's release into the general population was "a completion and exoneration of his disciplinary sentence." We disagree. First, there is no evidence in this record to support such a finding. There is not even any evidence of what the Texas authorities thought the effect of their action might be on the Iowa sanctions, or even that they knew that there had been any Iowa sanctions. Second, and more fundamentally, the proposition in question is not a finding of fact. The legal effect of the Texas action is a question of law, and, as we have noted, there is simply no authority to support the complete-exoneration theory. Ordinarily, we are justified in assuming that Iowa prison authorities' official action is in compliance with applicable Iowa law, regulations, and practices. Their action is presumed to be legal and constitutional, to use an old formulation.[1] Pletka has given us nothing with which to overcome this presumption.

## II.

Several new arguments are now offered against our conclusion.

---

1. But still a good one. See *United States Department of State v. Ray,* —— U.S. ——, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991).

■ 1. It is said that the Interstate Corrections Compact itself, Iowa Code Ann. § 247.2 (West Supp.1991), creates a liberty interest, so that Pletka, having been placed in the general population by the Texas prison system, must be given a new hearing before being returned to disciplinary segregation in Iowa. *Post,* p. 1486 (dissenting opinion). No provision of the Compact says anything about liberty interests. The provision quoted by the dissent, *post* n. 4, says nothing at all about rights to a hearing before being returned to segregation in the sending state. In fact, the provision confirms that Pletka remained subject to Iowa law, regulations, and practice while confined in Texas pursuant to the Compact. Nothing in the Compact even purports to answer the question of whether, under Iowa law, the unexplained return of a prisoner to general population is a complete exoneration of previously imposed disciplinary sanctions.

2. It is asserted that *Hayes v. Lockhart, supra,* is controlling. *Hayes* holds that the release of a prisoner into the general population by a receiving state is the equivalent of a release of that prisoner into the general population by the sending state. We have acknowledged and followed that holding. This does not solve the present case. We are conceding that Pletka must be treated exactly as if Iowa, not Texas, had released him into the general population. Despite the unequivocal statement in the dissenting opinion, *post* p. 1486, nothing in *Hayes* holds that a prisoner confined for disciplinary reasons enjoys a complete pardon just because he has been returned to the general population. To be sure, that could be so. But whether it is depends on Iowa law, and after two rounds of appellate briefing and two oral arguments no one has cited any Iowa law establishing such a proposition. The crux of the analysis in *Hayes* was that, under Arkansas prison regulations, a prisoner initially confined for nonpunitive reasons, and then released into the general population, could not be returned to special conditions of confinement absent a certain substantive predicate, which, under controlling federal law, would have to be established in some sort of hearing. The portion of the *Hayes* opinion cited by the dissent actually demonstrates this, because it cites "Administrative Regulation § 836," which is the Arkansas prison regulation creating the liberty interest relied on by the *Hayes* Court.

■ 3. Finally, it is said that Iowa's prison regulations confer a liberty interest on prisoners who, like Pletka, have been released into the general population. No Iowa prison regulation is cited for this proposition. The authorities cited are two cases, *Clark v. Brewer,* 776 F.2d 226, 230–32 (8th Cir.1985), and *Dedrick v. Wallman,* 617 F.Supp. 178, 182 (S.D.Iowa 1985). Neither case is in point. *Clark* considers generally the status of prisoners in the general population in the Iowa State Penitentiary. It holds that certain cited Iowa prison regulations give prisoners a right to remain in the general population, as opposed to being placed in "close management," unless certain substantive predicates are met. Accordingly, prisoners in the general population have a liberty interest in remaining there, and they may not be transferred to "close management" without due process of law. The "close management" status involved in *Clark* was a nonpunitive status, sometimes called "administrative segregation," as opposed to "disciplinary segregation." *Clark* has nothing to do with prisoners who have received disciplinary segregation after concededly constitutional procedures, and have then, for some reason, been returned to the general population. The transfer in question in *Clark* was from the general population to administrative, nonpunitive confinement. The transfer in question here is from the general population to punitive confinement, in the case of an inmate who has already been found after an appropriate hearing to deserve punitive confinement. *Clark* is beside the point.

*Dedrick* is also inapposite. It holds that inmates have a liberty interest in not being placed in special conditions of confinement for disciplinary reasons. No one has ever doubted this. It has always been true that a person may not be punished by government without due process of law. Here, Pletka has been punished, but he received

due process before his punishment began. The point at issue in the present case is whether his release into the general population before he had served his whole time in disciplinary confinement completely wipes out the earlier sentence, despite the fact that no one ever told him so. If Iowa wanted to adopt such a rule, certainly it could, and, if it did, Pletka could not be punished again without a subsequent rules infraction and a new due-process hearing. But Iowa has not done this, and neither *Hayes,* nor the Interstate Compact, nor *Clark,* nor *Dedrick* can supply this essential lack in the logical foundation of the plaintiff's claim.

### III.

Accordingly, we hold that the action of the defendant Iowa prison officials in this case did not violate Pletka's rights under the Due Process Clause of the Fourteenth Amendment. That portion of the judgment of the District Court which granted Pletka equitable relief must therefore be reversed. Our conclusion that no conduct in violation of the federal Constitution occurred makes it unnecessary to discuss the defense of qualified immunity. So much of the judgment of the District Court as dismissed Pletka's claim for damages is affirmed, but simply on the ground that no violation of the Constitution has taken place. We express no view on the question of qualified immunity that would arise if Pletka's constitutional theory had merit.

Affirmed in part, reversed in part.[2]

2. Plaintiff has been represented in this Court and in the District Court by appointed counsel. We are grateful to her for her diligent and effective service.

1. The original panel opinion has been vacated by our order placing this case en banc. The majority for the most part now addresses that opinion. Although the panel analysis in the original opinion is supportable, after rebriefing and oral arguments at the en banc hearing, I became convinced that a more reasoned analysis can be made than that originally written. I now feel that the explicit holding of *Hayes* is controlling in this matter and cannot be distinguished. The en banc court's effort to challenge the vacated opinion is basically irrelevant and does not address the analysis to which we now adhere.

LAY, Chief Judge, with whom McMILLIAN, Circuit Judge, joins, dissenting.

I respectfully dissent.[1]

This is a relatively simple case. It involves the essence of what due process is all about: the state's affording basic fairness to an individual. It is in federal court because it involves the liberty interest, albeit a limited one, of a state prisoner. According to the State of Iowa, a prisoner may be placed in "administrative segregation" for disciplinary or other reasons. As the state's brief reflects, "[b]efore his transfer to Texas, Pletka had been in administrative segregation status because of past disciplinary violations." Appellee's Brief at 4, *passim.* In Texas, Pletka was placed among the general prison population.

The magistrate[2] and an experienced district judge[3] found that *Hayes v. Lockhart,* 754 F.2d 281 (8th Cir.1985), provided the controlling rule of law. In *Hayes* we reasoned that a protectable liberty interest was created when a state prisoner was released into the general prison population of the receiving state. We held that release to be the equivalent, under the Interstate Corrections Compact (ICC), to release in the state of original detention.[4] *Id.* at 284.

*Hayes* involved a state prisoner who had been in administrative segregation in the

2. The Honorable R.E. Longstaff, now a United States District Judge for the Southern District of Iowa.

3. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

4. Like Arkansas, Iowa has incorporated the Interstate Corrections Compact:

Any inmate confined pursuant to the terms of this compact shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or the inmate's status changed on account of any action or proceeding in which the inmate could have participated if confined in any appropriate institution of the sending state located within such state.

Arkansas prison system and then was transferred to Florida under the ICC. Florida placed him in the general prison population. This court, in a unanimous opinion, held that under the ICC the prisoner had regained "a protectable liberty interest in being assigned to the general prison population (in Florida) upon his return to Arkansas." *Id.* at 282. We held that upon release to the general prison population, Arkansas' prison regulations create "an expectation that Arkansas inmates [will] not [again] be confined to administrative segregation until one of the conditions of the regulations exist[s]." *Id.* In light of such regulations, before the prisoner could be returned to administrative segregation he was entitled to minimum due process. *Id.*

Under *Hayes,* there should be little question that Pletka's release into the general prison population in Texas, after being in administrative segregation in Iowa, albeit for disciplinary reasons, *constituted a complete exoneration of his time to be served in administrative segregation in Iowa.* In finding this, the district court relied specifically on our controlling language in *Hayes:*

> [A]n inmate confined in an institution pursuant to the terms of this compact *shall at all times be subject to the jurisdiction of the sending state * * * * Ark. Stat.Ann. Section 46–1402, Art. IV, ¶ (c) (Repl.1977). Therefore, *Hayes's release into the general prison population in Florida was equivalent to release into the general prison population in Arkansas, and accordingly the prison officials were required to follow the guidelines in Administrative Regulation section 836 before reassigning Hayes to administrative segregation.*

*Id.* at 283, n. 1 (emphasis added).[5]

Now, for a reason not clear to me, the majority holds that *Hayes* applies only to a prisoner who is in administrative segregation for nondisciplinary reasons. The majority reads into the ICC that the release by Texas authorities of Pletka into the general prison population does *not* carry the same legal implication as Florida's release of the prisoner did in *Hayes* because Pletka had been in administrative segregation for disciplinary reasons. There is no law which supports such a proposition.

This court misreads *Hayes* and Iowa law, neither of which distinguishes between administrative detention for punitive or other reasons. Pletka's situation *is* somewhat different from Hayes'. "Initially, Hayes was assigned to administrative segregation because he was a threat to security and because he was a danger to other inmates, ..." *Hayes,* 754 F.2d at 283. Pletka was in administrative segregation because of past rule infractions. Reason dictates that, if anything, Pletka's liberty interest should more readily vest than Hayes': Pletka was punished for rules violations and then released; Hayes was segregated to protect others from his violent behavior—something subject to change in a new prison and under new circumstances thus lending his classification more readily to the discretion of the receiving state. There is greater reason to view the release by the receiving prison as creating a liberty interest when the original administrative segregation was for fixed disciplinary reasons than for the protection of other inmates. Under Iowa's prison regulations, if Iowa had released Pletka into its own general population, a liberty interest would have been created until some further misconduct occurred. *See Clark v. Brewer,* 776 F.2d 226, 230–32 (8th Cir.1985); *Dedrick v. Wallman,* 617 F.Supp. 178, 182 (S.D.Iowa 1985).[6] An inmate has a liberty interest in not being punished by the imposition of administra-

---

Iowa Code Ann. section 247.2 (1991 Supp.).

5. In the original panel opinion, the majority stated the district court's finding was one of fact based upon a permissible inference that Texas' release of Pletka into the general population constituted a complete exoneration. On closer examination of the district court's opinion, I agree the district court was stating this as a conclusion of law based on the law set forth in

*Hayes.* Treating this finding as one of law allows de novo review, strengthening the district court's holding, when read in light of the explicit language of *Hayes.*

6. Both sides recognized at oral argument that, under Iowa prison regulations, when Iowa transfers a prisoner to another state, the prisoner's complete record goes with him. Upon Plet-

tive segregation until he or she has been convicted of a rules violation. *Hayes*, 754 F.2d at 282–83. Unless *Hayes* is to be overruled, before Pletka may be returned to further administrative segregation for disciplinary purposes a new offense must be committed.

The majority also overlooks the explicit agency rationale underlying the *Hayes* decision. *Hayes'* release into the general prison population in Florida was deemed "equivalent to release into the general prison population in Arkansas." *Id.* at 283 n. 1. The *Hayes* court noted that according to the ICC an inmate " 'confined to an institution pursuant to the terms of the compact shall at all times be subject to the jurisdiction of the sending state. . . .' " *Id.* In other words, Florida was the agent for Arkansas, just as here Texas was the agent for Iowa. This interpretative principle of law has nothing to do with whether or not the prisoner was in administrative segregation for punitive reasons. The majority impliedly faults Pletka for not proving *why* Texas released him. This was not the prisoner's burden. The prison authorities have that knowledge.[7] Furthermore, such inquiry would make this an issue of fact, thereby contradicting the majority's acknowledgement that the issue is one of law. Why Texas authorities released Pletka into the general population is irrelevant.[8] Whatever the reasoning, Texas' action was the action of Iowa, the sending state, and constituted, under the ICC and Iowa's prison regulations, the "equivalent [of] release into the general prison popula-

tion in [Iowa]. . . ." *Hayes*, 754 F.2d at 283 n. 1.

The majority argues the actions of the prison officials are presumed to be constitutional. Certainly such a presumption disappears when the officials violate the clear mandate of this court and of the ICC.

The Supreme Court has held that a state prisoner is a "person" and that the state cannot deprive a prisoner of "liberty" without "due process of law." *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (the procedure for determining whether misconduct of a prisoner has occurred must observe certain minimal due process requirements); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (holding that due process must be afforded to a state parolee) (reversing this court's en banc holding at 443 F.2d 942 (8th Cir.1971)) (Lay, Heaney & Bright dissenting). Decisions such as the present one are a throw-back to the pre-*Morrissey* days. Such decisions unfortunately are becoming increasingly more commonplace and signal the endangerment of the simple legal tenet that all state prisoners are to be treated equally and fairly in accordance with the principles of due process. I respectfully submit that the majority holding is not faithful to the principles of either *Morrissey* or *Wolff.*

I dissent.

---

ka's transfer, the State of Texas had full knowledge that Pletka had been previously placed in administrative segregation in Iowa for disciplinary reasons.

7. Hayes did not have to prove why Florida released him into the general population. The prison record showed, however, that Hayes was originally placed in administrative segregation because he "was a danger to other inmates." *Hayes*, 754 F.2d at 283. When he was returned to Arkansas he was again placed in administrative segregation. He was provided a hearing five days after he was so confined. The district court as well as the court of appeals found he was afforded the due process required by law. In addition, the court found that Hayes was entitled to good time credit during his stay in Florida.

8. Magistrate Longstaff correctly observed:

> *Hayes* holds that a release into general prison population in the receiving state (Texas) is no different than releasing the inmate into general population in the sending state (Iowa). *When there exists an Interstate Corrections Compact such as is present in this case, it is not relevant where the release to general population occurs, neither does a court consider the reason for the initial segregation or release.* *Hayes* establishes that once an inmate is released into general population, whether that be in a receiving state or the original institution, the inmate is entitled to minimum due process before being assigned to administrative segregation again.

Ma. Order at 4 (emphasis added).